# EXHIBIT 5

**S141163**

ORIGINAL

Name  Roberto Urieta

Address  P.O.BOX 689-CW-342-L

Soledad, Ca. 93960

CDC or ID Number  D-61987

SUPREME COURT
**FILED**

FEB 1 6 2006

Frederick K. Ohrich Clerk

Deputy

SUPREME COURT OF CALIFORNIA

*(Court)*

Roberto Urieta
Petitioner
                    vs.

A. Kane, Warden
Respondent

**PETITION FOR WRIT OF HABEAS CORPUS**

No. _____

*(To be supplied by the Clerk of the Court)*

## INSTRUCTIONS — READ CAREFULLY

- **If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.**

- **If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.**

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original and four copies.

- If you are filing this petition in the California Supreme Court, file the original and thirteen copies.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

Approved by the Judicial Council of California for use under Rules 56.5 and 201(h)(1) of the California Rules of Court [as amended effective January 1, 1999]. Subsequent amendments to Rule 44(b) may change the number of copies to be furnished the Supreme Court and Court of Appeal.

Page one of six

Form Approved by the
Judicial Council of California
MC-275 [Rev. January 1, 1999]

**PETITION FOR WRIT OF HABEAS CORPUS**

Penal Code, § 1473 et seq.;
Cal. Rules of Court, rules 56.5, 201(h)

6. GROUNDS FOR RELIEF

   **Ground 1:** State briefly the ground on which you base your claim for relief. For example, "the trial court imposed an illegal enhancement." *(If you have additional grounds for relief, use a separate page for each ground. State ground 2 on page four. For additional grounds, make copies of page four and number the additional grounds in order.)*

   SEE THE GROUNDS, SUPPORTING FACTS AND AUTHORITIES ATTACHED HERETO.

   a. Supporting facts:
   Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts upon which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is: *who* did exactly *what* to violate your rights at what time *(when)* or place *(where)*. *(If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)*

   b. Supporting cases, rules, or other authority (optional):
   *(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)*

7.  **Ground 2** or **Ground** _____  *(if applicable):*

SEE THE GROUNDS, SUPPORTING FACTS AND AUTHORITIES ATTACHED HERETO.

a.  Supporting facts:

b.  Supporting cases, rules, or other authority:

8. Did you appeal from the conviction, sentence, or commitment? ☐ Yes. ☒ No.    If yes, give the following information:

   a. Name of court ("Court of Appeal" or "Appellate Dept. of Superior Court"):

   _____

   b. Result: _____    c. Date of decision: _____

   d. Case number or citation of opinion, if known: _____

   e. Issues raised:  (1) _____

      (2) _____

      (3) _____

   f. Were you represented by counsel on appeal? ☐ Yes. ☐ No.  If yes, state the attorney's name and address, if known:

   _____

9. Did you seek review in the California Supreme Court? ☐ Yes. ☐ No.    If yes, give the following information:

   a. Result: _____    b. Date of decision: _____

   c. Case number or citation of opinion, if known: _____

   d. Issues raised:  (1) _____

      (2) _____

      (3) _____

10. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal, explain why the claim was not made on appeal:

   _____

   _____

11. Administrative Review:

   a. If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See *In re Muszalski* (1975) 52 Cal.App.3d 500 [125 Cal.Rptr. 286].) Explain what administrative review you sought or explain why you did not seek such review:

   Petitioner sought Administrative Relief. His Administrative Appeal was denied on

   January 11, 2005. See Exhibit "A" on pages 1-4.

   _____

   _____

   _____

   _____

   _____

   _____

   b. Did you seek the highest level of administrative review available? ☒ Yes. ☐ No.
      *Attach documents that show you have exhausted your administrative remedies.*

12. Other than direct appeal, have you filed any other petitions, applications, or motions with respect to this conviction, commitment, or **issue** in any court?    ☒ Yes. If yes, continue with number 13.    ☐ No. If no, skip to number 15.

13. a. (1) Name of court: SUPERIOR COURT OF LOS ANGELES COUNTY

   (2) Nature of proceeding (for example, "habeas corpus petition"): HABEAS CORPUS PETITION

   (3) Issues raised: (a)  No evidence support the Board's findings of unsuitability for parole.

   (b) The Board breached the plea agreement by increasing petitioner's punishment to a punishment of a greater offense.
   (4) Result (Attach order or explain why unavailable):  Petition was denied.

   (5) Date of decision:  June 17, 2004. See Exhibit "A" on pagea 5-12.

   b. (1) Name of court: CALIFORNIA COURT OF APPEALS, SECOND APPELLATE DISTRICT

   (2) Nature of proceeding:  HABEAS CORPUS PETITION

   (3) Issues raised: (a)  No evidence support the Board's findings of unsuitability for parole.

   (b) The Board breached the plea agreement by increasing petitioner's punishment to a punishment of a greater offense.
   (4) Result (Attach order or explain why unavailable):  Petition was denied. See Exhibit "A" on page 13.

   (5) Date of decision:  July 15, 2004.

   c. For additional prior petitions, applications, or motions, provide the same information on a separate page.

14. If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result:



15. Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See In re Swain (1949) 34 Cal.2d 300, 304.)



16. Are you presently represented by counsel?    ☐ Yes.    ☐ No.  If yes, state the attorney's name and address, if known:



17. Do you have any petition, appeal, or other matter pending in any court?    ☒ Yes.    ☐ No.  If yes, explain:

Because the Governor reversed the Board's 2004 granting of parole, on Nov. 21, 2005 petitioner filed a petition in the California Supreme Court. See Exhibit "A" on page 21. Petitioner request his two petitions be consolidated.

18. If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court:



I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true.

Date:  February 7, 2006

▶ _Roleta Clute_
(SIGNATURE OF PETITIONER)

## TABLE OF CONTENTS

PAGE

### GROUND ONE

UNDER FOUR DIFFERENT APPROACHES PETITIONER POSSESS PROTECTED LIBERTY          3
INTEREST IN PAROLE SUITABILITY DECISIONS PROTECTED BY THE DUE PROCESS
CLAUSE TO THE UNITED STATES CONSTITUTION AND HE FURTHER POSSESS
PTOTECTION FROM THE DUE PROCESS CLAUSE ON ITS OWN FORCE.

### GROUND TWO

UNDER THE DUE PROCESS CLAUSE TO THE CALIFORNIA AND UNITED STATES             8
CONSTITUTIONS PETITIONER HAS THE RIGHT TO BE CONSIDERED FOR RELEASE
ON PAROLE UNDER THE LAW THAT WAS IN EFFECT AT THE TIME HE WAS CONVICTED
AND THIS COURT SHALL REVIEW PETITIONER'S PETITIONER UNDER THE LAW THAT
WAS IN EFFECT AT THE TIME HE COMMITTED THE OFFENSE.

### GROUND THREE

THE BOARD OF PRISON TERMS WITHOUT SUPPORTING EVIDENCE HAS FOUND PETITIONER
UNSUITABLE FOR A PAROLE RELEASE DATE IN VIOLATION OF THE DUE PROCESS CLAUSE   13
TO THE CALIFORNIA AND UNITED STATES CONSTITUTIONS FOURTEENTH AMENDMENT.

### GROUND FOUR

THE EXECUTIVE BRANCH OF GOVERNMENT HAS BREACHED THE PLEA AGREEMENT           26
PETITIONER ENTERED WITH THE PROSECUTOR AND IT HAS INCREASED PETITIONER'S
PUNISHMENT OF SECOND DEGREE MURDER TO A PUNISHMENT OF FIRST DEGREE MURDER.

### GROUND FIVE

DUE TO THE FACT THAT PETITIONER WAS NOT CHARGED WITH FIRST DEGREE MURDER
UNDER PENAL CODE SECTION 189, BUT HE WAS CHARGED WITH SECOND DEGREE MURDER    32
UNDER PENAL CODE SECTION 187 NEITHER THE STATE COURTS NOR ANYBODY WITHIN
THE EXECUTIVE BRANCH OF GOVERNMENT HAVE JURISDICTION TO INCREASE THE
PUNISHMENT OF PETITIONER'S SECOND DEGREE MURDER CONVICTION TO A PUNISHMENT
OF FIRST DEGREE MURDER CONVICTION.

TABLE OF CONTENTS                                    page

## GROUND SIX

WHEN THE CALIFORNIA SUPREME COURT CONSTRUED PENAL CODE SECTION 3041 IT        36
MISAPPLIED IT'S OWN LAW AND CONSTRUED IT CONTRARY TO THE CLEARLY
ESTABLISHED LAW BY THE UNITED STATES SUPREME COURT AND IN VIOLATION OF
THE DUE PROCESS CLAUSE TO THE CALIFORNIA AND UNITED STATES CONSTITUTIONS.

## GROUND SEVEN

THE CALIFORNIA SUPREME COURT CONSTRUED PENAL CODE SECTION 3041 IN A WAY THAT    43
IT TURNED THE ISL INTO A VAGUE AND DISCRIMINATORY LAW IN VIOLATION OF THE
ADA AND THE DUE PROCESS CLAUSE TO THE CALIFORNIA AND UNITED STATES CONSTI-
TUTIONS.

1  Roberto Urieta  D-61987
2  P.O.BOX 689-CW-342-L
3  Soledad, Ca. 93960

4

5

6                          SUPREME COURT OF CALIFORNIA

7

8  _____ )
9  Roberto Urieta,            )
        Petitioner             )      PETITION FOR WRIT OF HABEAS CORPUS
10                             )
                               )
11         vs.                 )
                               )
12     A.  Kane, Warden        )
13       Respondent            )
   _____ )

14

15

16                      STATEMENT OF THE CASE

17

18    On June 6, 1986 petitioner was arrested. He was charged for second degree murder

19  under Penal Code Section 187. On May 1, 1987 he pleaded guilty to second degree

20  murder.  On July 8, 1987 petitioner was sentenced to 15 years to life. See Exhibit

21  "B" on pages 1-6.

22   Petitioner's Minimum Eligible Parole Release Date was on May 27, 1996. See

23  Exhibit "I" on page 1.

24  On May 5, 1995 was petitioner's Initial Parole Suitability Hearing Held. See

25   Exhibit "H" on pages 1-5.

26    Since the Initial Parole Suitability Hearing was held, a series of Parole Suita-

27  bility Hearings have been held. See Exhibit "H".

28

                                    1

1    From the Parole Suitability Hearing of 2003 petitioner Administratively

2    Appealed. On January 11, 2005 his Administrative Appeal was denied. See Exhibit

3    "A" on page 1-4.

4    From the denial of Parole Release Date of the Parole Suitability Hearing of the

5    2003 petitioner sought relief by filing a Habeas Corpus Petition in the California

6    Superior Court of Los Angeles County and in the California Court of Appeals, Second

7    Appellate District. His Petitions were denied. See Exhibit "A" on pages 5-13.

8    Petitioner then sought review in the California Supreme Court. See Exhibit "A" on

9    page 14.

10    About on October 21, 2004 the California Supreme Court denied review on case No.

11    S126528.

12                          HEARING OF 2004

13    At the Parole Suitability Hearing of the year 2004 petitioner was found suitable

14    for a Parole Release Date. The Board computed petitioner's term to be 14-years and

15    4 months. See Exhibit "H" on pages 28-39.

16    On February 25, 2005 the Governor reversed the Board's findings of suitability.

17    See Exhibit "A" on pages 15-17.

18    Petitioner sought relief to the reversal of the Governor by filing Habeas Corpus

19    petitions in the Superior Court of Los Angeles County and in the California Court

20    of Appeals, Second Appellate District. His petitions were denied. See Exhibit "A"

21    on pages 18-20.

22    To challenge the reversal of the Governor on Nobember 21, 2005 petitioner filed

23    a Habeas Corpus Petition in the State of California Supreme Court. See Exhibit "A"

24    on page 21.

25    Now the present petition is filed to challenge the 2005 findings of unsuitability

26    by the Board. See a copy of the Parole Suitability Hearing of 2005 at Exhibit "I".

27    Petitioner request his two petitions be consolidated because each petition is from

28    a different decision of two different Agencies.

1                                  GROUND   ONE

2

3      UNDER FOUR DIFFERENT APPROACHES PETITIONER POSSESS PROTECTED LIBERTY
4      INTEREST IN PAROLE SUITABILITY DECISIONS PROTECTED BY THE DUE PROCESS
       CLAUSE TO THE UNITED STATES CONSTITUTION AND HE FURTHER POSSESS
5      PROTECTION FROM THE DUE PROCESS CLAUSE ON ITS OWN FORCE.

6

7      First.  The California Supreme Court held that prisoners possess a protected

8      liberty interest in connection with parole decisions rendered by the Board, that

9      it would be anomalous to conclude that they possess no comparable interest when

10     such decisions are reviewed by the Governor, where such review must be based upon

11     the same factors considered by the Board. That under California law, this liberty

12     interest underlying a Governor's parole review decisions is protected by the Due

13     Process of law. In re Rosenkrantz, 29 Cal. 4th 616, 660–661, 664, 128 Cal. Rptr.2d

14     104, 143–144, 146 (Cal. 2002).

15     In Vitek v. Jones, 445 U.S. 480, 488–489, 100 S. Ct. 1254, 1261 (1980) the Court

16     held, "Once a State has granted prisoners a liberty interest, we held that due

17     process protection are necessary "to insure that the State–created right is not

18     arbitrarily aborgated." See also Wolffv. McDonnell, 418 U.S. 539, 557, 94 S. Ct.

19     2963, 2975, 41 L.Ed.2d 935 (1974); Meachum v. Fano, 427 U.S. 215, 226, 96 S. Ct.

20     2532, 2539 (1976); Dent v. West Virginia, 129 U.S. 114, 123, 9 S.Ct. 231, 233,

21     32 L.Ed. 623 (1889).

22

23     Therefore, under this approach petitioner possess a protected liberty interest

24     conferred  to him by the State of California on parole suitability decisions and

25     it is protected by the Due Process Clause to the United States Constitution.

26

27

28

                                          3

1    SECOND.  Petitioner possess protected liberty interest based on the nature of

2    the interest he has been deprived.

3        In Sandin v. Conner, 515 U.S. 472, 480-484, 115 S.Ct. 2293, 2299-2300, fn. 5,

4    132 L. Ed.2d 418 (1995) the Court held that the protected liberty interest inquiry

5    shall not be focused on the language of the regulation but on the nature of the

6    deprivation.  See also Board of Regents of State Colleges v. Roth, 408 U.S. 564,

7    570-571,  92 S. Ct. 2701, 2705-2706 (1972); Meachum v. Fano, supra, 427 U.S. 215,

8    224, 96 S. Ct. 2532, 2538.

9        In Hewitt v. Helms, 459 U.S. 460, 470, 103 S. CT. 864, 870 (1983) the Court

10   found protected liberty interest in an administrative segregation issue even when

11   the Court held that, "The deprivations imposed in the course of the daily opera-

12   tions of an institution are likely to be minor when compared to the release from

13   custody at issue in parole decisions and good time credits."

14       In Board of Regents of State Colleges v. Roth, supra, 408 U.S. at 571, 92 S. Ct.

15   at 2706 the Court held that, "Liberty" and "Property" are broad and majestic terms.

16   That they are among the " great constitutional concepts.

17       Therefore, on the nature of the deprivation to be released from custody in

18   parole decisions petitioner possess protected liberty interest.

19       In Sandin v. Oconner, supra, 515 U.S. at 480-484, 115 S. Ct. at 2299-2300, fn. 5

20   the Court overruled Hewitt v. Helms, supra, 459 U.S. 460, 103 S. Ct. 864 on the

21   issue that protected liberty interest inquiry shall not be focused on the language

22   of the regulation.

23       Contrary to the clearly established law of the United States Supreme Court a

24   United States District Court in Sass v. Cal. Bd. of Prison Terms, 376 F. Supp. 2d

25   975 (E.D. Cal. 2005) held that we (prisoners) don't have protected liberty interest

26   on parole suitability decisions protected by the Due Process Claue to the United

27   States Constitution.

28

4

1    In Sass the Court contrary to the clearly established law by the United

2    States Supreme Court focused on the mandatory language of the statute rather

3    than on the nature of the deprivation.

4    But lets assume for purpose of argument that the inquiry shall be focused on

5    the mandatory language of the statute, the decision in Sass is still contrary to

6    the United States Supreme Court's claerly established law.

7    The inquiry on the language of the statute not only shall be focused on the

8    mandatory language, but also on the conditions imposed to the inmates. See

9    Board of Pardons v. Allen (1987) 482 U.S. 369, 372-373, 107 S. Ct. 2415, 2417-

10   2418, 2429, fn. 9; Greenholtz v. Inmates of Nebraska Penal & Corr., 442 U.S. 1,

11   12, 99 S.Ct. 2100, 2106 (1979).

12   In California an inmate is not entitle to be released on parole unless he meet

13   the special conditions of parole. In re Rosenkrantz, 29 Cal.4th 616, 656, 128 Cal.

14   Rptr.2d 104, 139; Title 15 of CCR Sec. 2401, 2402, 2403.

15   In Sass the Court didn't consider the mandatory language of the regulations,

16   it didn't consider the conditions an inmate must meet before he be released on

17   parole. The Court only focused on the mandatory language of Penal Code  3041.

18   Therefore, the decision of the Sass Court either under the rule of the nature of

19   the deprivation or under the rule of the mandatory language is unreasonable and

20   contrary to the clearly established law by the United States Supreme Court.

21   This Court only needs to read Board of Pardons v. Allen, supra, 482 U.S. 369;

22   and Greenholtz v. Inmates of Nebraska Pen. & Corr., supra, 442 U.S. 1 and compare

23   the statutes on Montana and Nebraska with the statute of California to conclude

24   that petitioner possess protected liberty interest because the statutes in the

25   three states are indistinguishable.

26   In Greenholtz and Board of Pardons v. Allen the Court made its own independent

27   interpretation of the State Statutes.

28

1    Therefore, the law requires the Federal Court to make its own interpretation

2    of Penal Code 3041 independent from the interpretation of the State Court. Williams

3    v. Taylor, 529 U.S. 362, 378–379, 384, 389, 402, 411, 120 S. Ct. 1495, 1505, 1508,

4    1511, 1517, 1522 (2000).

5    Petitioner submit to this Court that he possess protected liberty interest in

6    Parole Suitability decisions protected by the Due Process Clause to the United

7    States Constitution.

8

9    THIRD. When the State misapplied its own law it creates a protected

10   liberty interest reviewable in habeas corpus petition. Hicks v. Oklahoma, (1980)

11   447 U.S. 343, 346, 100 S. CT. 2227, 2229, 65 L.Ed.2d 175; Ballard v. Estelle,

12   937 F.2d 453, 546  (9th Cir. 1991).

13   For the reasons state in this petition the State of California has misapplied

14   its own law. It misaplied its own law when it construed Penal Code  3041, and

15   it has misapplied its own law on parole suitability decisions. See the grounds

16   raised in this petition.

17   FOUR.  Petitioner possess protected liberty interest because he has been

18   punished in excess of the time authorized by the statutory law for the crime he

19   was convicted. Hicks v. Oklahoma, supra, 447 U.S. 343, 346, 100 S. Ct. at 2229;

20   Whalen v. United States, 445 U.S. 684, 63 L. Ed. 2d 715, 100 S. Ct. 1432, fn. 4

21   (1980).

22   The UNited States Supreme Court requires lines between the sentences when the

23   crime is divided into degrees. Solem v. Helm, 77 L.Ed.2d 637, 652–653, (1983).

24   In California the lines are the matrices to set the base term. Title 15 of

25   CCR  2403 (b) and (c).

26   Petitioner has served a term in excess of the maximum term required by the

27   Matrix for the base term of second degree murder convictions. CCR  2403 (c).

28

6

1    The law require some evidence to be on the record to support the decision.

2    See Superintendent Mass. Corr. Institution v. Hill, 472 U.S. 445, 454-457,

3    105 S. Ct. 2768, 2773-2775 (1985); In re Rosenkrantz, supra, 29 Cal. 4th 616,

4    656-657, 128 Cal. Rptr.2d 104, 139-140.

5    At the present time the record is void of the some evidence required to hold

6    petitioner in custody in excess of the time required by the Matrix for the base

7    term for second degree murder convictions.

8    Due to the fact that petitioner has been punished in excess of the time

9    authorized by the statutory law, he possess protection from the due process

10   clause on its own force. Sandin v. Conner, supra, 515 U.S. 472, 115 S. Ct. 2293,

11   2295; Wolff v. McDonnell, supra, 418 U.S. 539, 555-556, 94 S. Ct. 2963, 2974-2975.

12

13   For the foregoing reasons petitioner submit to this court that he possess

14   protected liberty interest in Parole Suitability Decisions and he further has

15   protection on its own force from the  Due Process Clause to the United States

16   Constitution because he has served a period of time in excess of the time requi-

17   red by the State Law for the crime petitioner committed.

18

19

20   Because petitioner possess protected liberty interest in parole decisions under

21   the California and United States Constitutions his claims are reviewable under

22   both constitutions.

23

24

25

26

27

28

1                                    GROUND TWO

2

3    UNDER THE DUE PROCESS CLAUSE TO THE CALIFORNIA AND UNITED STATES CONSTITUTIONS

4    PETITIONER HAS THE RIGHT TO BE CONSIDERED FOR RELEASE ON PAROLE UNDER THE LAW
     THAT WAS IN EFFECT AT THE TIME HE WAS CONVICTED AND THIS COURT SHALL REVIEW

5    PETITIONER"S PETITION UNDER THE LAW THAT WAS IN EFFECT AT THE TIME HE COMMITTED

6    THE OFFENSE.

7    "When the defendant waives his state court remedies and admits his guilt, he

8    does so under the law then existing." McMann v. Richardson, 397 U.S. 750, 774,

9    25 L. Ed.2d 763, 775, 90 S. Ct. 1441 (1970).

10   "When "issues of both retroactivity and application of constitutional doctrine

11   are raised" the retroactivity issue should be decided first." Teague v. Lane (1989)

12   489 U.S. 288, 300, 109 S. CT. 1061, 1070.

13   Petitioner has standing to challenge the unconstitutionality of Penal Code Sec.

14   3041 due to the way it was construed by the California Supreme Court in In re

15   Dannenberg, 34 Cal. 4th 1061, 23 Cal. Rptr.3d 417 (Cal. 2005) (Dannenberg).

16   "Retroactivity is properly treated as a threshold question, for, once a new rule

17   is applied to the defendant in the case announcing the rule, evenhanded justice

18   requires that it be applied retroactively to all who are similarly suitated."

19   Teague v. Lane, supra, 489 U.S. 288, 300, 109 S. Ct. 1061, 1070.

20

21   Some courts have relied in In re Dannenberg, supra,  34 Cal. 4th 1061 to denied

22   the petitions of fellow inmates of parole decision issues. See In re DeLuna, supra,

23   24 Cal. Rptr. 3d 643, 649; Sass v. Cal. Bd. of Prison Terms, 376 F. Supp.2d 975,

24   981-983 (E.D. Cal. 2005). Therefore, it is assumed the Court is going to relied

25   in In re Dannenberg to deny petitioner the relief he is seeking.

26   However, because in In re Dannenberg the California Supreme Court changed the

27   Indeterminate Sentence Law (ISL) it cannot be applied retroactively without

28   violating the retroactive doctrine and the Due Process Clause.

                                         8

1    In In re Dannenberg, supra, 34 Cal 4th 1061, 23 Cal. Rptr.3d 417, 440, 443, 104

2    P.3d 783 the California Supreme Court determined that the Board is not required to

3    refer to its sentencing matrices or to compare other crimes of the same type in

4    deciding whether a prisoner is suitable for a parole and whether the prisoner's

5    crime was "especially cruel" or "exceptionally callous." Rather, the Board may

6    characterize a murder as "'particularly egregious'" if there is violence or

7    viciousness beyond what is "minimally necessary" for conviction. See also in In re

8    DeLuna, supra, 24 Cal. Rptr.3d 643, 649.

9    The above holding changed the law that was in effect at the time petitioner

10   committed the offense.

11   At the time petitioner committed the offense the Board was required to refer to

12   its sentencing matrices to find the inmate suitable for a parole release date. In

13   re Stanworth, 33 Cal.3d 176, 181–186, 187 Cal.Rptr. 783, 786–788 (Cal. 1982); In

14   re Seabock, 140 Cal. App.3d 29, 40, 189 Cal. Rptr. 310, 317, fn. 9 (1983); In re

15   Ramirez, 114 Cal. Rptr.2d 381, 397 (Cal. App. 1 Dist. 2001).

16   The decisions of the California Court of Appeals is the authority in the absence

17   of a California Supreme Court decision on the issue. Kolander v. Lawson, 461 U.S.

18   352, 103 S. Ct. 1855, fn. 6 (1983). Therefore, previous to the time the California

19   Supreme Court had construed Penal Code Section 3041 in Dannenberg, the decisions

20   of the California Court of Appeals could be the authority in parole decisions.

21   Under Stanworth it is required the Board to consider all the factors to find the

22   prisoner suitable for a parole release date and to set the base term according to

23   the time prescribed in the matrices and that only when the inmate was convicted of

24   first degree murder and for a specific category of extremely serious offense the

25   board could set the base term beyond the term authorized by the matrices. See also

26   In re Rosenkrantz, 29 Cal. 4th 616, 653–655, 682–684, 128 Cal. Rptr.2d 104, 137–138,

27   161–162 (Cal. 2002).

28

9

1    At the time petitioner committed the offense Penal Code Subsection 3041 (a)

2    required and it is still requiring that the Board to compare other crimes of the

3    same type in deciding whether a prisoner is suitable for release on parole. See

4    also In re Seabock, supra, 140 Cal. App.3d 29, 189 Cal. Rptr. 310, fn. 7.

5    The comparison of other crimes of the same type in deciding whether a prisoner

6    is suitable for release on parole was overruled by the California Supreme Court.

7    See In re Danneberg, supra, 23 Cal. Rptr. 3d 417, 443, and fn. 18.

8

9    At the time petitioner committed the offense Penal Code Subsection 3041 (a)

10   required and it is still requiring that one year previous to the inmate's minimum

11   Eligible Parole Release Date the Board shall meet with the inmate and shall

12   normally set his parole release date.

13   Even when Penal Code Subsection 3041 (a) didn't violate any constitution the

14   California Supreme Court in Dannenberg, supra, 23 Cal. Rptr.3d 417, 433-434

15   overruled the requirement that the Board "shall normally set the prisoner's

16   release date at the initial parole suitability hearing." It held that the Board

17   can denied to every prisoner our release date without considering Penal Code

18   Subsection 3041 (a).

19   At the time petitioner committed the offense the Board could denied to prisoners

20   our release date only if the prisoner had committed the offense in an "especially

21   heinous, atrocious: or "cruel" manner. See Title 15 of CCR sec. 2402 (c)(1) and

22   in In re Seabock, supra, 140 Cal. App.3d at 39, 189 Cal. Rptr. 310, 316, fn. 8.

23   In Dannenberg, the requirement that the Board must find the crime was committed

24   in an especially heinous, atrocious or in a cruel manner was changed by the Court

25   and it held that the Board may characterize a murder as "' particularly egregious'

26   if there is violence or viciousness beyond what is "minimally necessary" for a

27   conviction. In re Dannenberg, supra, 23 Cal. Rptr.3d 417, 440, 443; In re DeLuna,

28   supra, 24 Cal. Rptr. 3d 643, 649.

1    No matter the circumstances of the commitment offense the Board in every case

2    finds evidence beyond the minimum necessary to establish the elements for second

3    degree murder and the Board is using that evidence to denied to every prisoner our

4    release on parole for the rest of our natural life as the California Supreme Court

5    in Dannenberg directed the Board to do.

6    Therefore, in In re Dannenberg, supra, 34 Cal. 4th 1061 the California Supreme

7    Court changed the ISL in that the Board needs not longer consider all the factors

8    it used to consider to find the inmates suitable for a parole release date it only

9    needs to consider the commitment offense factor to deny the inmate's release from

10   custody; the Board needs not consider Penal Code Subsection 3041 (a) and it only

11   needs to find minimum evidence in the commitment offense beyond the minimum

12   evidence necessary to establish the elements for second degree murder to deny to

13   every prisoner our release from custody based on the static commitment offense

14   circumstance only and for the rest of our natural lives.

15   The California Supreme Court's holding in In re Dannenberg is clearly an effort

16   of the Court to increase the punishment of second degree murder convictions to the

17   punishment of First Degree Murder convictions and the Court expressed its desire

18   to increase the punishment by directing the Board to increase the crimes of second

19   degree murder to the crimes of first degree murder. See In re Dannenberg, supra,

20   23 Cal. Rptr.3d 417, fn. 16.

21

22   THE WAY THE CALIFORNIA SUPREME COURT CONSTRUED PENAL CODE SECTION 3041 CANNOT BE

23   APPLIED TO PETITIONER AND THE PRISONERS SIMILARLY SITUATED WITHOUT VIOLATING THE

24   RETROACTIVE DOCTRINE.

25   In violation of the Retroactive Doctrine and contrary to the clearly established

26   law by the United States Supreme Court in Bouie v. City of Columbia, 378 U.S. 347,

27   84 S. Ct. 1697 (1964); and Rogers v. Tennessee, 532 U.S. 451, 121 S. Ct. 1693 (2001)

28   the courts have relied on the unreasonable construction of Penal Code Section 3041

1    in In re Dannenberg, to denied the fellow inmates the relief they have sought.

2    And since once a new rule is applied to the defendant in the case announcing the

3    rule, evenhanded justice requires that it be applied retroactively to all who are

4    similarly situated, it applied to petitioner because petitioner are similarly

5    situated to Dannenberg. However, the application of the Dannenberg decision to

6    petitioner violates the retroactive doctrine and it is contrary to the clearly

7    established law by the United States Supreme Court.

8       In Bason v. Kentuckey, 476 U.S. 79, 106 S. Ct. 1712, 90 L.Ed.2d 69 (1986) the

9    Court modified a portion of Swaim v. Alabama, 380 U.S. 202, 85 S. Ct. 824, 13 L.

10   Ed. 2d 759 (1965) and the portion that was modified could not be applied retroac-

11   tively on collateral review of convictions that became final before, Batson was

12   announced. See Teague v. Lane, supra, 489 U.S. 288, 294-295, 109 S. Ct. 1061,

13   1065-1067.

14      In Teague v. Lane, supra, 489 U.S. at 305-307, 109 S. Ct. at 1073 the Court made

15   it clear that habeas corpus petitions shall be adjudicated by applying the law that

16   was in effect at the time the prisoner was convicted.

17

18      For the foregoing reasons petitioner's petition shall be adjudicated by

19   applying the law that was in effect at the time he committed the offense rather

20   than be adjudicated under the Dannenberg holdings and petitioner request his

21   petition be adjudicated by applying the law that was in effect when he committed

22   the offense and was convicted.

23

24

25

26

27

28

1                                    GROUND THREE

2

3       THE BOARD OF PRISON TERMS WITHOUT SUPPORTING EVIDENCE HAS FOUND PETITIONER
4       UNSUITABLE FOR A PAROLE RELEASE DATE IN VIOLATION OF THE DUE PROCESS CLAUSE
        TO THE CALIFORNIA AND UNITED STATES CONSTITUTIONS FOURTEENTH AMENDMENT.
5

6        In Title 15 of California Code of Regulations (CCR) Section 2402 are the

7       circumstances the Board shall consider to find prisoners suitable or unsuitable

8       for a parole release date.

9        In Title 15 of CCR 2402 (c) are the circumstances tending to show unsuitability.

10        CCR 2402 (c)(1) COMMITMENT OFFENSE.  "The prisoner committed the offense in an

11        especially heinous, atrocious or cruel manner."

12        The Board has found that petitioner is not suitable for parole and that he would

13       pose an unreasonable risk of danger to society, and a threat to public safety if

14       released from prison.

15        In support of this finding the Board has relied on the following factors and

16        statement of facts.  The Board stated:

17        "Specifically, the offense was carried out in an especially cruel and callous
18        manner, and the offense was carried out in a manner which demonstrates an
          exceptionally callous disregard for human suffering in that at the time the
19        crime was committed it was a public area, it was an open area, and other
20        individuals could have been injured or killed.  And the motive for the crime
          is very trivial in relation to the offense in that the stated motive is that
21        petitioner and his crime partners were going to scare the victim. That after
22        the victim had broken their car window, and there also seems to be some gang
23        retaliation involved in the crime. And that these conclusions are drawn from
24        the statement of facts as they appear in the crime section in the September
          2005 Board Report, where it states that on June 5, 1986, Urieta and Caracas
25        drove to a location in West Pico Boulevard, and Urieta (Petitioner) shot the
26.       victim Alvir with a 25 caliber handgun, and Alvir died at the scene."
          See Exhibit "I" on pages 79-80.
27

28

                                            13

1  CCR 2402 (a). The findings of the Board that petitioner is not suitable for parole

2  and would pose an **unreasonable** risk of danger to society and a threat to the public

3  safety if released from prison is not supported by the evidence.

4    On February 25, 1997 Senior Psychologist Bruce M. Bakeman, Ph. D. wrote that

5  petitioner's level of dangerousness was likely to be less than for the average

6  inmate. See Exhibit "F" on page 8.

7    On May 10, 1999 Staff Psychologist Joe Reed, Ph. D., J. D., wrote that if petitio-

8  ner would be released to the community, his violence potential was considered to be

9  no more than the average citizen in the community. See Exhibit "F" on page 6.

10   The Board found that on July 8, 2003, Dr. Hewchuk prepared a psychological

11 Report and that the report of the Dr. is favorable in that it states petitioner has

12 no greater risk of danger to society than the average citizen. See Exhibit "I: on

13 pages 80-81.

14   On Inmate Evaluation Report prepared by Correctional Counselor S. Arno on May

15 2002 he believed that petitioner would pose a moderate to low degree of threat

16 to the Public if released from custody at that time. Several Correctional Officials

17 agreed with this assesment. See Exhibit "G" on pages 10-11.

18   On May 1999 Correctional Counselor P.D. Ballard prepared an Inmate Evaluation

19 Report and he believed that petitioner would pose a moderate to low degree of threat

20 to the public if released from custody at that time. Several Correctional Officials

21 agreed with this assesment. See Exhibit "G" on pages 21-22.

22   On July 2000 Correctional Counselor J. Studebaker prepared an Inmate Evaluation

23 Report and she believed that petitioner would pose a low to moderate degree of

24 threat to the public at that time if released from prison. Several Correctional

25 Official agreed with this assesment. See Exhibit "G" on pages 16-17.

26 Therefore, the evidence does not support the findings of the Board that petitioner

27 would pose an **unreasonable** risk of danger to society and a threat to public safety

28 if released from prison. CCR 2402 (a).

1    CCR 2402 (c)(1) COMMITMENT OFFENSE. "The prisoner committed the offense in an

2    especially heinous, atrocious or cruel manner. The Factors to be considered include:

3    Under this circumstance the Board found that the offense was carried in an

4    especially cruel and callous manner. See Exhibit "I" on page 79.

5    Cruel is defined as disposed to give pain to others; willing or pleased to hurt

6    or aflict; savage, inhuman, merciless." People v. Superior Court of Santa Clara

7    County, 31 Cal.3d 797, 802, 183 Cal. Rptr. 800, 802 (Cal. 1982); People v. Aguilar,

8    58 Cal. App. 4th 1196, 1201, 68 Cal. Rptr.2d 619, 621-622 (Cal. App. 1 Dist. 1997).

9    Cruel means designed to inflict a high degree of pain with utter indiffering, or

10    even enjoyment of the suffering of others. Allen v. Superior Court of Kern County,

11    113 Cal. App.3d 42, 52, 169 Cal. Rptr. 608, 614, (Cal. App. 5 Dist. 1981); Spinke-

12    llink v. Wainwright, 578 F.2d 582, 611 (5th Cir. 1978).

13    "What is intended to be included are those capital crimes where the actual

14    commission of the capital felony was accompanied by such additional acts as to

15    set the crime apart from the norm of capital felonies—the conscienceless or

pitiless crime which is unnecessarily torturous to the victim." Spinkellink v.

16    Wainwright, supra, 578 F.2d 582, 611.

17    Penal Code Subsection 190.2 (a)(14) hold that:  "The murder was especially

18    heinous, atrocious or cruel, manifesting exceptional deprivity. As used in this

19    section, the phrase "especially heinous, atrocious, or cruel, manifesting

exceptional deprivity" means a consciousless or pitiless crime that is

20    unnecessarily torturous to the victim."

21    What the State and Federal Law show is that a murder committed in a cruel manner

22    is a torturous murder. The Board has not referred to any piece of evidence to show

23    petitioner committed the murder in a torturous manner. Therefore, the findingd of

24    the Board that petitioner committed the murder ina cruel manner is not supported by

25    any evidence.

26    The United States Supreme Court construed the word "torture" with in pari materia

27    with 'aggravated battery" so as to require evidence of serious physical abuse of the

28    victim before death. Godfrey v. Georgia, 446 U. S. 420, 421, 100 S. Ct. 1759, 1761.

1   In petitioner's offense there is absolutely no shred of evidence to support

2   the findings of the Board that he committed the offense in a cruel manner which

3   means he committed the murder by torture.

4   Petitioner committed the murder by shooting at the victim and the victim was

5   killed instantaneously. See Exhibit "B" on pages 6, 8.

6   Therefore, the findings of the Board that petitioner committed the murder in a

7   cruel manner is not supported by any evidence.

8   BUT EVEN IF THERE WOULD BE SOME EVIDENCE TO SUPPORT THE FACTOR THAT PETITIONER

9   COMMITTED THE OFFENSE IN A CRUEL MANNER AFTER CONSIDERING IT FOR THE LAST 11

    YEARS HAS BEEN IN VIOLATION OF PETITIONER'S DUE PROCESS RIGHTS TO THE CALIFORNIA

10  AND UNITED STATES CONSTITUTIONS.

11  On May 18, 1995 was petitioner's Initial Parole Suitability held. See Exhibit "H".

12  Since the Initial Parole Suitability Hearing was held the Board has considered the

13  Cruel Factor to denied petitioner's release on parole. See Exhibit "H" on pages 1,15.

14  By considering the same static factor for the last 11 years to denied petitioner's

15  release on parole violates the Due Process Clause to the California and United

16  States Constitutions. See Biggs v. Terhune, 334 F.3d 910, 917 (9th Cir. 2003);

17  In re Rosenkrantz, 29 Cal. 4th 616, 683-684, 128 Cal. Rptr.2d 104, 161-162 (Cal.2002).

18  Although, Biggs v. Terhune, supra, 334 F.3d 910 is a United States Court of

19  Appeals decision the decision of the Court of Appeals is the authority in the

20  absence of the United States Supreme Court decision on the issue. Kolander v.

21  Lawson, 461 U.S. 352, 103 S. Ct. 1855, fn. 6 (1983).

22  Because in In re Rosenkrantz, supra, 29 Cal. 4th at 683-684, 128 Cal. Rptr.2d 104,

23  161-162, the Court held that the release on parole cannot be denied on a static

24  factor after certain time without violating due process this holding is enforceable

25  by the Due Process Clause to the United States Constitution and the United States

26  Supreme Court clearly established law in that the Court has held that "Once a State

27  has granted prisoners a liberty interest, due process protection is necessary "to

28  insure that the state-created right is not arbitrarily abrogated." Vitek v. Jones,

1    45 U.S. 480, 488-489, 100 S. Ct. 1254, 1261 (1980); Wolff v. McDonnell, 418 U. S.

2    539, 557, 94 S. Ct. 2963, 2975, 41 L. Ed.2d 935 (1974); Meachum v. Fano, 427 U.S.

3    215, 226, 96 S. Ct. 2539 (1976).

4      Therefore, the cruel factor cannot longer be considered by the Board to denied

5    petitioner's release on parole and the consideration of it has been in violation

6    of the Due Process Clause to the California and United States Constitutions.

7      For the foregoing reasons the factor that petitioner committed the crime in a

8    cruel manner is no longer some evidence to deny petitioner his release from prison.

9

10     CCR 2402 (c)(1)(A)."Multiple victims were attacked, injured or killed in the same

11   or separate incidents."

12     Under this factor the Board has found that other individuals could have been

13    injured or killed. See Exhibit "I" on page 79.

14     Petitioner was not charged because other individuals could have been injured or

15   killed. Apparently in the history of the law a killer has not been chatged for the

16   persons who were present during the killing.

17     To give harsher sentence because of an uncharged offense for which there is no

18   conviction, however, violates due process. United States v. Grayson (1978) 438 U.S.

19   41, 54-55, 98 S. Ct. 2610, 2617-2618, 57 L.Ed.2d 582; Apprendi v. New Yersey, 120

20   S. Ct. 2348, 2355 (2000); People v. Montano, 6 Cal. App. 4th 121, 8 Cal. Rptr.2d

21   136 (Cal. App. 5 Dist. 1992).

22     The Board started considering this factor at the parole suitability hearing of

23   2003. See Exhibit "H" on page 22.

24     Although the Board started considering this factor at the Parole Suitability

25   Hearing of 2003, it can be assumed the Board has considered this evidence since

26   the Initial Parole Suitability Hearing was held (1995). Therefore, it can be assu-

27   med the Board has considered the multiple victims factor for the last 11 years.

28

1   By considering the same static factor for the last 11-years to denied petitioner's

2   release on parole violates the Due Process Clause to the California and United

3   States Constitutions. Biggs v. Terhune, supra, 334 F.3d at 917; In re Rosenkrantz,

4   supra, 29 Cal. 4th 616, 683-684, 128 Cal. Rptr. 2d at 161-162.

5   For the foregoing reasons there is not some evidence to denied petitioner's

6   release from custody based on the multiple victims factor. Besides, petitioner's

7   punishment cannot be increased only because there were other persons present

8   when he committed the offense. Petitioner was not charged with any other crime and

9   therefore, the Board is without jurisdiction to increase his punishment for

10   crimes no charged on the indictment or information. Stirone v. United States,

11   361 U. S. 212, 217, 4 L.Ed.2d 252, 256, fn. 3 (1960); Russell v. United States,

12   369 U.S. 749, 762-763, 8 L.Ed.2d 240, 250, 82 S. Ct. 1083 (1962); United States v.

13   Bailey, 444 U.S. 394, 414, 100 S. Ct. 624, 62 L.Ed. 2d 515 (1980).

14

15   CCR 2402 (c)(B). "The offense was carried out in a dispassionate and calculated

16   manner, such as an execution style murder."

17   The Board has found that petitioner carried out the offense in a callous manner.

18   See Exhibit "I" on page 79.

19   Callous mean feeling no emotion, feeling no sympathy for others. Merriam Webster's

20   Collegiate Dictionary. Tenth Edition.

21   The evidence does not support the fact that petitioner killed the victim without

22   emotion. The victim got mad because petitioner and petitioner's partners were

23   parked on the street. The victim smushed down a window of the car with a hammer.

24   Petitioner and his partners left in the car but they left a friend at the scene.

25   When they returned looking for their friend the victim and other members of his

26   gang rushed toward petitioner and petitioner's two friends to beat them up or to

27   kill them who knows what they had in mind. They had weapons the victim had smushed

28   a window of the car with a hammer.

1    When the mob rushed toward petitioner and petitioner's friends petitioner shot

2    the victim because (the evidence show ) the victim was the most aggressive man of

3    the whole mob. See Exhibit "B" on pages 6, 8, 16-17.

4    Therefore, the evidence show petitioner didn't shoot the victim without emotion

5    but he shot the victim because he was afraid for his life and the life of his

6    friends.

7    The Board has not denied that there was a mob rushing toward petitioner and

8    petitioner's two friends to hurt them, but on the contrary the Board has found that

9    petitioner shot to a group of people which means the mob. See Exhibit "H" on p. 22,

10    and Exhibit "I" on page 79.

11    Under Penal Code Sections 197 and 198 when petitioner shot to the mob who was

12    threatening to hurt them (petitioner and his two friends) it was a justifiable

13    homicide.

14    For the foregoing reasons the record is without evidence to support the finding

15    of the Board that petitioner committed the offense in a callous manner. On the

16    Contrary the evidence shows petitioner shot the victim because he was afraid for

17    his life and the life of his friends. Penal Code Sections 197, 198.

18

19    And by considering this static factor for the last 11 years to denied petitioner's

20    release on parole violates the Due Process Clause to the California and United

21    States Constitutions. Biggs v. Terhune, 334 F.3d at 917; In re Rosenkrantz, supra,

22    29 Cal. 4th at 683-684, 128 Cal. Rptr.2d at 161-162.

23    Under CCR 2402 (c)(1) (D), the Board has found that the offense was carried out in a

24    manner which demonstrates an exceptionally callous disregard for human suffering.

25    See Exhibit "I" on page 79.

26    This language refers to something akin to torture or that the victim sufferred

27    much more that that which would be inherent in any killing. In re Rosenkrantz, 95

28    Cal. Rptr.2d 279 at 287, 80 Cal. App. 4th 409, 419, fn. 13 (Cal. App. 2 Dist.2000).

1   In petitioner's convicted offense the record is without evidence to support that

2   the victim suffered much more than other victims in a second degree murder crimes.

3   The victim died instantaneously. See Exhibit "B" on pages 6, 8.

4     The Board is supporting its finding with the facts that at the time the crime

5   was committed it was a public area, that it was an open area and that other indivi-

6   duals could have been injured or killed. See Exhibit "I" on page 79.

7     This evidence does not support the findings of the Board that the offense was

8   carried out in a manner which demonstrates an exceptionally callous disregard for

9   human suffering in that the evidence does not support that when the victim was

10  killed he suffered much more than other victims in a second degree murder offenses

11  only because it was a public place or because other gang memebrs were present.

12    The Board has been considering this factor expressly since the Parole Suitability

13  Hearing of 1997. See Exhibit "H" on pages 6, 12, 15.

14    Therefore, the Board has considered this factor to denied petitioner's release

15  on parole for the last 9 years. This is also a no changing factor and after being

16  considering it for the last 9-years violates the Due Process Clause to the Califor-

17  nia and United States Constitutions. Biggs  v. Terhune, supra, 334 F.3d at 917;

18  In re Rosenkrantz, supra, 29 Cal. 4th at 683-684, 128 Cal. Rptr.2d at 161-162.

19    Therefore, the findings of the Board that the offense was carried out in a manner

20  which demonstrates an exceptionally insensitive disregard for human suffering is

21  not supported by the evidence in the record and if there would be some evidence to

22  support the findings of the Board after being considering it for the last 9-years

23  it was no longer some evidence to denied petitioner his re;ease from custody.

24

25    CCR 2402 (c)(1)(E) "The motive for the crime is inexplicable or very trivial in

26  relation to the offense."

27    The Board found that the motive for the crime is very trivial in relation to the

28  offense. See Exhibit "I" on page 79.

1    In In re Scott, 119 Cal. App. 4th 871, 893, 15 Cal. Rptr.3d 32, 41 (2004) the Court defined the

2    "Motive that is very trivial in relation to the offense." as follows:

3    "The reference in Board regulations to motives that are "very trivial in relation-

4    ship to the offense" therefore requires comparisons; to fit the regulatory descri-
     tion, the motive must be materially less significant (or more "trivial") than those

5    which conventionally drive people to commit the offense in question, and therefore,

6    more indicative of a risk of danger to society if the prisoner is released than is
     ordinarily presented."

7

8    The evidence does not support petitioner committed the offense with a very trivial

9    motive.

10   The victim had broken a window of the car where petitioner and his friends were

11   riding because the victim and the members of two gangs didn't want petitioner and

12   his friends on that street. Because petitioner and his friends left in a rush they

13   left behind one of their friends. When they returned where the crime occurred to

14   tried to find their friend they parked the car and got out of it to tried to find

15   their friend. When got out of the car the victim and members of two gangs rushed

16   toward petitioner and petitioner's friends to hurt them At this point of time

17   petitioner shot in the direction of the victim because the victim appeared to be

18   the leader of the mob and the most aggressive man. See Exhibit "I" on pages 16-20.

19   The evidence no only show the motive was not very trivial but it show that under

20   Penal Code Sections 197-198 petitioner committed a justifiable homicide. In that

21   he shot to the mob because he and his two friends were in danger to be killed or

22   injured. See Exhibit "I" on page 44.

23   For the foregoing reasons the evidence show that the motive for the crime was not

24   very trivial in relation to the offense and therefore, there are not evidence to

25   denied petitioner his release from custody.

26   At the Parole suitability hearing of 1999 the Board started considering the tri-

27   vial motive factor. See Exhibit "H" on pages 12, 15, 22.

28

1    The continued consideration of this factor to denied petitioner his release from

2    prison violates Due Process Clause to the California and United States Constitutions.

3    Biggs v. Terhune, supra, 334 F.3d at 917; In re Rosenkrantz, supra, 29 Cal. 4th at

4    683-684, 128 Cal. Rptr.2d at 161-162.

5

6    CCR 2402 (c)(2) PREVIOUS RECORD OF VIOLENCE.  As a juvenile petitioner was convicted

7    for two misdemeanor offenses for pushing a teacher. and for an assault. See Exhibit

8    "B" on pages 11-12.

9    Petitioner denied he had pushed the teacher. See Exhibit "I" on page 33.

10    Petitioner further has denied the assault. He has claimed someone threw a rock at

11    a police officer and that they thought it was him. See Exhibit "B" on page 12 and

12    Exhibit "I" on pages 32-33.

13    The Board has considered this circumstance since 1995. See Exhibit "H" on pages

14    1-2; Exhibit "I: on page 80.

15    The consideration of this static factor for the last 11-years to denied petitioner

16    his release from prison violates the Due Process Clause to the California and United

17    States Constitutions. Bigss v. Terhune, supra, 334 F.3d at 917; In re Rosenkrantz,

18    supra, 29 Cal. 4th at 683-684, 128 Cal. Rptr. 2d at 161-162.

19

20    CCR 2402 (c)(6) INSTITUTIONAL BEHAVIOR. The prisoner has engaged in serious miscon-

21    duct in prison or jail. The Board found that petitioner has been disciplinary free

22    since he has been imprisoned. See Exhibit "I" on page 81.

23

24            PETITIONER MEET THE CRITERIA TO BE RELEASED ON PAROLE

25    Under CCR 2402 (d) are listed the Circumstances tending to show suitability.

26    CCR 2402 (d)(1). NO JUVENILE RECORD.  As a juvenile petitioner was convicted

27    for three misdemeanor offenses.

28    Petitioner was born on 6-11-66. See Exhibit "B" on page 5.

1    On 12-14-82 petitioner was convicted of Driving a Vehicle without owner's concent.

2    On 4-15-83 petitioner was convicted for violating Penal Code Sec. 415 a misdemeanor.

3    On 4-11-84 Petitioner was convicted for violating Penal Code Sec. 240 (assault)

4    a misdemeanor. See Exhibit "B" on pages 11-12.

5    Petitioner has denied he had committed the later offense. That he pleaded guilty

6    because he was told if he plea guilty he will go home right away other wise he would

7    be hold in jail until the next date of Court which was going to be within three

8    months. See Exhibit "I" on pages 32-33.

9    The Board has considered these three misdemeanor offenses for the last 11-years to

10    denied petitioner's release on parole. See Exhibit "H" on pages 1-2.

11

12    CCR 2402 (d)(2). STABLE SOCIAL HISTORY. "The prisoner has experienced reasonable

13    relationship with others."

14    Petitioner has maintained a close relationship with his family  members and with

15    friends and with the community in general. See Ezxhibit "C"; and Exhibit "I" on

16    pages 36-43.

17    CCR 2402 (c)(3). Signs of Remorse. The prisoner performed acts which tend to

18    indicate the presence of remorse, such as attempting to repair the damage, seeking

19    help for or relieving suffering of the victim, or indicating that he understands

20    the nature and magnitude of the offense."

21    Petitioner's mother helped the victim's father to raise money to send the body of

22    the victim to El Salvador where he was from. See Exhibit "I" on pages 29-30.

23    Petitioner has recognized the seriousness of the offense he committed. See Exhibit

24    "I" on page 67.

25    Petitioner always has expressed his remorse for the death of the victim. See Exhi-

26    bit "I" on pages 34, 65; Exhibit "B" on page 17 and Exhibit "F" on pages 5, 7, 9.

27

28

1    CCR 2402 (d)(4) MOTIVATION FOR THE CRIME. "The prisoner committed his crime as

2    the result of significant stress in his life, especially if the stress had built

3    over a long period of time."

4    Petitioner committed the crime as a result of significant stress in his life and

5    the stress had built over a long period of time."

6    Petitioner grew up in a place where there was a lot of gang activities. Petitioner

7    used to carry a gun because of fear of being assaulted and robbed. See Exhibit "I"

8    pages 14-30.

9    On the night of the incident the car where he and his friends were riding was

10   smushed with a hammer by the victim. The victim and a mob of gang memebers were

11   rushing toward petitioner and petitioner's two friends to hurt them when petitioner

12   shot the victim. Therefore, petitioner shot the victim as a result of a tremendous

13   stress on his life and due to the fear that his friends and himself would be killed

14   or seriously injured by the mob.

15   CCR 2402 (d)(5).  N/A.

16   CCR 2402 (d)(6). Lack of Crminal History. "The prisoner lacks any significant

17   history of violent crime."

18   As a Juvenile petitioner was convicted for two misdemeanor violent crimes. See

19   Exhibit "B" on pages 11-12.

20   Petitioner has denied he had used violence in any of the offenses. See Exhibit "I"

21   on pages 32-34.

22   Therfore, petitioner lacks any significant history of violent crimes.

23   CCR 2402 (d)(7). Age. "The prisoner's present age reduces the probability of

24   recidivism."

25   At the 2004 Parole Suitability Hearing the Board felt because of petitioner's

26   maturity, growth, greater understanding and advanced age have been reduced the

27   probability of recidivism. See Exhibit "H" on page 32.

28

24

1    CCR 2402 (dO(8). UNDERSTANDING AND PLANS FOR FUTURE. The prisoner has made

2    realistic plans for release or has developed marketable skills that can be put

3    to use upon release."

4    Petitioner has both. He has realistic plans for release. His mother bought a

5    house and established a business in Rosarito Baja California, Mexico for petitioner

6    to live in the house and work in the family's business upon his release from

7    prison. See a copy of the Support Letters at Exhibit "C" and Exhibit "I" on pages

8    38, 43.

9    While in prison petitioner has developed marketable skills that can be put to

10   use upon his release from prison. Petitioner has completed Vocational Welding,

11   Vocational Appliance Repair, he is an experienced sewing Machine Operator and

12   Sewing Machine Repairman; Auto Tune Up Specialist, Dry Cleaning; Print Shop; and

13   Computer Repair Technician. See Exhibit "E" on pages 1-10, 19-20; Exhibit "G" on

14   pages 6, 12-14, 18; Exhibit "I" on pages 47, 81.

15

16   CCR 2402 (d)(9). Institutional Behavior. "Institutional activities indicate an

17   enhanced ability to function within the law upon release."

18   As stated above. While petitioner has been imprisoned he has completed seven

19   vocationals. He obtained his High School Diploma, his GED Certificate and he has

20   participated in numerous Self Help programs. See the Superior Court's summary of

21   petitioner's achievements at Exhibit "A" on pages 7-9; See Exhibit "D"; Exhibit "E'

22   on pages 1-20; and Exhibit "G" on pages 8-10.

23   For the foregoing reasons petitioner meet the criteria for his release on parole

24   but the Board in a Capricious and Arbitrary Manner has denied his release from

25   prison.

26   Because the record is without evidence to support the denial of petitioner's

27   release from custody, petitioner requests his immmediate release from prison.

28

1                              GROUND FOUR

2

3     THE EXECUTIVE BRANCH OF GOVERNMENT HAS BREACHED THE PLEA AGREEMENT PETITIONER

4     ENTERED WITH THE PROSECUTOR AND HAS INCREASED PETITIONER'S PUNISHMENT OF SECOND

5     DEGREE MURDER  TO A PUNISHMENT OF FIRST DEGREE MURDER CONVICTION IN VIOLATION
       OF THE 5TH, 6TH, AND 14TH AMENDMENTS.

6          On May 1, 1987 - petitioner pleaded guilty to second degree murder and he

7     was sentenced to 15-years to life. See Exhibit "B" on page 3,5.

8          The United States Supreme Court has recognized different degrees of Criminal

9     Culpability. Mullaney v. Wilbur, 421 U.S. 684, 697-698, 95 S. CT. 1881, 1889 (1975);

10    Solem v. Helm, 77 L.Ed.2d 637, 651 (1983); Apprendi v. New Yersey, 120 S. Ct. 2348,

11    2360 (2000); Harmelin v. Michigan, 501 U.S. 957, 996, 111 S. Ct. 2680, 2702 (1991).

12    Apparently the principle of different degrees of criminal culpability is a univer-

13    sally established principle that has been recognozed since 1215 when the Magna

14    Carta was written. See Solem v. Helm, supra, 77 L.Ed.2d at 645, fn. 9.

15         The States of California also recognize the principle of "different degrees of

16    criminal culpability."  The Legislature has enacted numerous statutes with different

17    degrees of criminal culpability.

18         Relevant in this issue is Penal Code Section 189 for first degree murder.

19    Sentence are 25-years to life, life without the possibility of parole and death

20    penalty.  Penal Code 187 for second degree murder. Sentence 15-years to life. See

21    Penal Code Section 190; People v. Robertson, 17 Cal. Rptr.3d 604, 610 (Cal. 2004);

22    Second Degree Murder and manslaughter are lesser included offenses of first degree

23    murder. People v. Stearns, 92 Cal. Rptr. 69, 14 Cal. App.3d 178 (Cal. App. 2 Dist.

24    1971).

25         Lesser included offenses, mean lesser in terms of magnitude of punishment.

26    Schmuck v. United States, 489 U.S. 705, 109 S. Ct. 1443, 103 L.Ed.2d 734 (1989);

27    Carter v. U.S. 530 U.S. 255, 147 L.Ed.2d 203, 120 S. CT. 2159, fn. 2 (2000).

28

                                           26

1    Most life-term inmates in United States have realistic expectation of parole.

2    Summer v. Shuman, 107 S. Ct. 2716, fn. 11 (1987).

3    In California prisoners who are serving life terms have realistic expectations

4    that they will be granted parole. In re Rosenkrantz, supra, 29 Cal. 4th 616, 654,

5    128 Cal. Rptr.2d 104, 138.

6    Petitioner pleaded guilty to second degree murder with the expectation he will be

7    deprived of his liberty only to the extent established by the statutory and regula-

8    tory law. I.N.S. v. St. Cyr, 533 U.S. 289, at 316, 321-323, 121 S. Ct. 2271, 2288,

9    2291-2292, (2001); Bowen v. Hood, 202 F. 3d 1211, 1220-1222 (9th Cir. 2000);

10    Magaña-Pizano v. I.N.S., 200 F.3f 603, 613 (9th Cir. 1999). However, the BPT has

11    held petitioner incarcerated beyond the term established by the statutes and regu-

12    lations in violation of the Due Process Clause to the California and United States

13    Constitutions. Hicks v. Oklahoma, 447 U.S. 343, 346, 100 S. Ct. 2227, 2229 (1980).

14    When petitioner pleaded guilty to second degree murder nobody advised him that by

15    pleading guilty to second degree murder eventually his punishment will be increased

16    to a punishment imposed  on a first degree murder conviction. Petitioner relied on

17    the written law that was in effect at the time he pleaded guilty to plead guilty to

18    second degree murder.   The written law that was in effect at the time he committed

19    the offense and pleaded guilty was that second degree murder convictions were

20    lesser included offenses of the greater offense of first degree murder. People v.

21    Wickershaw, 32 Cal. 3d 307, 326, 185 Cal. Rptr. 436, 446 (Cal. 1982); People v.

22    Stearns, 92 Cal. Rptr. 69, 14 Cal. App. 3d 178 (Cal. App. 2 Dist 1971); and that

23    when a defendant pleads guilty of a crime divided into degrees he will not be

24    punished for a higher degree of the crime. Penal Code Sec. 1192.1; and the Matrix

25    for the base term of second degree murder was: Minimum Term 10-years and Maximum

26    Term was 21-years. See CCR Subsection 2403 (c). Therefore, petitioner had no

27    reason to believe the States of California will breach the agreement he entered

28    with the prosecutor and eventually it will increase his punishment to the punish-

27

1    ment imposed on the greater offense of first degree murder. CCR Subsection 2403 (b).

2    In the Matrix for the base term the credits petitioner has earned during two

3    decades under CCR 2410 are not included. Without providing petitioner with the

4    credits he is entitle he has served the Maximum Term for his second degree murder

5    conviction (21-years) according to the matrix for the base term. CCR 2403 (c).

6    Now, petitioner is serving a punishment of the greater offense of first degree

7    murder conviction. CCR 2403 (b).

8    The government of California has breached the plea agreement petitioner entered

9    with the prosecutor because petitioner already served the maximum term for second

10    degree murder and now the government of California is punishing him with the

11    punishment of the greater offense of first degree murder.

12    "plea agreements are contractual in nature and are measured by contractual law

13    standards." Brown v. Poole, 337 F.3d 1155, 1159 (9th Cir. 2003); United States v.

14    Anderson, 970 F. 2d 602, 606 (9th Cir. 1992); People v. Shepard, 169 Cal. App. 3d

15    580, 586, 215 Cal. Rptr. 401, 405 (1985); People v. Collins, 45 Cal. App. 4th 849,

16    869, 53 Cal. Rptr.2d 367, 378 (1996).

17    The government is held "to literal terms of the agreement." United States v.

18    Baker, 25 F.3d 1452, 1458 (9th Cir. 1994); U.S. v. Schuman, 127 F.3d 815, 818

19    (9th Cir. 1997).

20    "Well established is the rule that the people will be held strictly to the terms

21    of plea bargain made with a criminally accused." People v. Nelson, 239 Cal. Rptr.

22    287, 289, 194 Cal. App.3d 77, 79 (Cal. App. 1 Dist 1987); In re Trglin, 51 Cal.

23    App. 3d 434, 438, 124 Cal. Rptr. 234, 237 (1975).

24    "When either the prosecution or the defendant is deprived of benefits for which

25    it has bargained, corresponding relief will lie from concessions made." People v.

26    Collins, 21 Cal. 3d 208, 214, 145 Cal. Rptr. 686, 689 (Cal. 1978); People v.

27    Collins, supra, 45 Cal. App. 4th 849, 863, 53 Cal. Rptr. 2d 367, 374.

28

1    The BPT is a party to the prosecutor's plea agreement. Therefore, the Board is

2    bound by the promise of the District Attorney. United States v. Anderson, supra,

3    970 F.2d 602, fn. 5.

4    Also it is established that the State cannot with one hand give a benefit and

5    with the other take it away. Bowen v. Hood, supra, 202 F.3d at 1223; People v.

6    Harvey, 25 Cal. 3d 754, 758, 159 Cal. Rptr. 696, 698-699 (Cal. 1979).

7    The Constitution does not take with one hand what it gives with the other.

8    Gideon v. Wainwright, 372 U.S. 339, 83 S. Ct. 792 (1963); Texas v. Cobb, 121 S. Ct.

9    1335, 1347 (2001).

10    The Government of California with one hand (the prosecutor) convict s defendants

11    of second degree murder and with the other hand (the Board of Prison Terms and the

12    Governor) increases the punishment of second degree murder convictions to the

13    punishment imposed on first degree murder convictions.

14    "When a plea rest in any significant degree on a promise or agreement of the

15    prosecutor, so that it can be said to be part of the inducement or consideration,

16    such promise must be fulfilled." Santobello v. New York, 404 U.S. 257, 262, 92 S.

17    Ct. 495, 499, 30 L.Ed. 2d 427 (1971); United States v. Anderson, supra, 970 F.2d

18    602, 607; People v. Kaanehe, 19 Cal.3d 1, 13, 136 Cal. Rptr. 2d 734, 737 (1999).

19        PETITIONER HAS CARRIED OUT HIS PART OF THE PLEA BARGAIN.

20    "It is clear from Santobello ... that due respect for integrity of plea bargains

21    demands that once a defendant has carried out his part of the bargain the govern-

22    ment must fulfill its part." Brown v. Poole, supra, 337 F.3d 1155, 1159.

23    According to the Matrix for the base term petitioner already served the maximum

24    term for the crime he was convicted second degree murder; While in prison petitio-

25    ner has developed marketable skills to put on use upon his release from prison;

26    petitioner also has realistic plans upon his release on parole and he has a minimum

27    prior violent criminal record and since he has been in custody he has not engaged

28    in any misconduct.  Therefore, petitioner has carried out his part of the agreement

1    and the Government of California shall be ordered to comply with its part of the

2    agreement and release petitioner from prison immmediately.

3        The United States Supreme Court requires the courts to draw lines between the

4    sentences of the crime when the crime is divided into degrees. See Solem v. Helm,

5    supra, 77 L.Ed. 2d at 652-653.

6        The California Courts didn't draw lines between the sentences of the crimes which

7    are divided into degrees, but the Legislature commanded the BPT to drw those lines.

8    See Penal Code Subsection 3041 (a).

9        The BPT drew lines between the sentences when the crime is divided into degrees.

10   The guidelines are the matrices to set the base term. Relevant to this issue are two

11   of them. See Title 15 of CCR 2403 (b) and (c). The Matrices are codified guidelines.

12   In re Stanworth, 33 Cal. 3d 176, 181-184, 187 Cal. Rptr. 783, 786-788 (1982). Because

13   the matrices are codified guidelines they cannot be hollow guidelines they mean

14   something. Carter v. U.S. 530 U.S. 255, 262, 120 S. Ct. 2159, 2165 (2000). Becaue

15   petitioner has been in custody since June 6, 1986 he has served 20 straight years

16   incarcerated even when the maximum term for second degree murder is 21 years without

17   credits according to the Matrix for the base term. CCR 2403 (c).

18       Petitioner is entitle to credits under CCR 2410. By providing petitioner with the

19   credits he is entitle he has served about 30 years of the sentewnce he is serving.

20   This is a term equivalent to the maximum term required to be served for a first degree

21   murder conviction (25-years to life). See CCR 2403 (b).

22       Under the clearly established law by the United States Supreme Court the punishment

23   of second degree murder cannot be increased to the punishment of first degree murder

24   crime because it violates the 5th, 6th, and 14th Amendments. It violates petitioner's

25   right to notice of the of the charges of every essential element for first degree

26   murder offense. Russell v. United States, 369 U.S. 749, 765, 8 L.Ed. 2d 240, 251

27   (1962); Almendarez-Torres v. United States, 523 U.S. 224, 228, 118 S. Ct. 1219, 1223,

28   140 L. Ed. 2d 350 (1998); It violates petitioner's right to be informed about the

1    nature of the charge against him. Henderson v. Morgan, 426 U.S. 637, 645, 49 L. Ed.

2    2d 108, 114 (1976); It violates petitioner's right to be find guilty in a jury

3    trial of each element of first degree murder beyond a reasonable doubt.  Re

4    Winship, 397 U.S. 358, 364, 25 L. Ed. 2d 368, 375, 90 S. Ct. 1068 (1970); Apprendi

5    v. Ney Yersey, 120 S. Ct. 2348, 2356–2357 (2000) and by increasing petitioner's

6    punishment of second degree murder conviction to the punishment of a first degree

7    murder the Government of California has breached the plea agreement petitioner

8    entered with the prosecutor. Santobello v. New York, supra, 404 U. S. at 262,

9    92 S. Ct. 445, 30 L. Ed.2d 427.

10

11    For the foregoing reasons petitioner requests his immediate release from prison.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1                              GROUND FIVE

2

3      DUE TO THE FACT THAT PETITIONER WAS NOT CHARGED WITH FIRST DEGREE MURDER UNDER

4      PENAL CODE 189, BUT HE WAS CHARGED WITH SECOND DEGREE MURDER UNDER PENAL CODE

5      SECTION 187 NEITHER THE STATE COURTS NOR ANYBODY WITHIN THE EXECUTIVE BRANCH
       OF GOVERNMENT HAVE JURISDICTION TO INCREASE PETITIONER'S PUNISHMENT OF SECOND

6      DEGREE MURDER TO A PUNISHMENT OF FIRST DEGREE MURDER CONVICTION.

7
                                  "A"
8

9      Petitioner was charged with second degree murder under Penal Code

10    Section 187. None of the essential elements of first degree murder were on the

11    information. See Exhibit "B" on pages 1-2.

12     The division of a crime into degrees constitutes an exclusive Legislative function.

13    People v. Bright, 12 Cal. 4th 652, 669-670, 49 Cal. Rptr.2d 732, 743 (Cal. 1996).

14    In California second degree murder is a lesser included offense of first degree

15    muder. People v. Bradford, 15 Cal. 4th 1229, 1344, 65 Cal. Rptr.2d 145, 212;

16    People v. Stearns, supra, 92 Cal. Rptr. 69, 14 Cal. App. 3d 178.

17    Lesser included offenses mean lesser in terms of magnitude of punishment. Schmuck

18    v. United States, 489 U.S. 705, 109 S. Ct. 1443, 103 L. Ed. 2d 734 (1989); Carter

19    v. U.S., 530 U.S. 255, 147 L. Ed.2d 203, 120 S. Ct. 2159, fn. 2 (2000).

20     The defendant cannot be punished for a higher degree of the crime than the degree

21    specified. People v. Mikhail, 13 Cal. App. 4th 846, 856, 16 Cal. Rptr.2d 641,647

22    (Cal. App. 4 Dist. 1993). Hicks v. Oklahoma, supra, 447 U.S. 343, 346, 100 S. Ct.

23    at 2229; Whalen v. United States, 445 U.S. 684, 100 S. Ct. 1432, fn. 4 (1980).

24    It is the function of the Legislature Branch of Government to define crimes and

25    prescribe punishments. In re Lynch, 8 Cal.3d 410, 414, 105 Cal. Rptr. 217, 219;

26    Manduley v. Superior Court, 27 Cal.4th 537, 552, 117 Cal. Rptr.2d 168, 180 (2004);

27    Harmelin v. Michigan, 501 U.S. 957, 962, 964, 111 S. Ct. 2680, 2684-2686 (1991);

28    Rummel v. Estelle, 445 U.S. 263, 274, 100 S. Ct. 1133, 1139, 63 L.Ed.2d 382 (1980).

                                     32

1    Therefore, under this approach neither the California Courts nor anybody within

2    the executive branch of government have jurisdiction to increase the punishment of

3    second degree murder to the greater punishment of first degree murder.  Because the

4    increasing of punishment is legislative in nature, the executive branch of govern-

5    ment lack jurisdiction to increase petitioner's punishment to that of a greater

6    offense's punishment.

7                                    "B"

8    THE GOVERNMENT OF CALIFORNIA FURTHER HAS NOT JURISDICTION TO INCREASE PETITIONER'S

9    PUNISHMENT BECAUSE HE WAS NOT CHARGED WITH THE CRIME OF FIRST DEGREE MURDER AND

     NONE OF THE ELEMENTS OF FIRST DEGREE MURDER WERE ON THE INFORMATION.

10

11    The California Supreme Court in In re Dannenberg, supra, 23 Cal. Rptr.3d 417,

12    fn. 16 held that the Board can increase the crimes of second degree murder to the

13    crimes of first degree murder if the prisoner committed the offense by deliberation

14    and premeditation. However, this holding violates Due Process of Law under the

15    California and United States Constitutions 5th, 6th, and 14th Amendments;  It

16    violates the statutory law Penal Code Section 1192.1 which hold that when a

17    defendant pleads guilty of a crime divided into degrees he will not be punished for

18    a higher degree of the crime and it    violates the regulatory law which requires

19    the inmate to serve a Minimum Term of ten years and a Maximum Term of 21-years for

20    a second degree murder conviction; and it is contrary to the clearly established

21    law by the United States Supreme Court which held that "No person shall be

22    required to answer for any of the higher crimes and the Court cannot permit a

23    defendant to be tried on charges that are not made in the indictment or information

24    against him." Stirone v. United States, 361 U.S. 212, 217, 4 L. Ed.2d 252, 256,

25    fn. 3 (1960).

26

27

28

                                    33

1    "The indictment or information shall be a plain, concise and definitive

2    written statement of the essential facts constituting the offense charged."

3    "The indictment or information shall state for each count the official or

     customary citation of the statute, rule, regulation or other provision of the

4    law which the defendant is alleged therein to have violated." Russell v. United

5    States, 369 U.S. 749, 762-763, 8 L.Ed.2d 240, 250, 82 S. CT. 1038 (1962); United

     States v. Bailey, 444 U.S. 394, 414, 100 S. Ct. 624, 62 L.Ed.2d 515 (1980).

6

7    "An indictment must set forth each element of the crime it charges. Almendarez-

8    Torres v. United States, 523 U.S. 224, 228, 118 S. CT. 1219, 1223, 140 L.Ed.2d

     350 (1998); Hamling v. United States, 418 U.S. 87, 117, 94 S. Ct. 2887, 2907,

9    41 L.Ed.2d 590 (1974); Russell v. United States, supra, 369 U.S. at 765,

10   8 L.Ed. 2d at 251.

11   "It is a settled rule that a bill of particulars cannot save an invalid

12   indictment and the trial court cannot amend a indictment or information.

13   Russell v. United States, supra, 369 U.S. at 770-771, 8 L.Ed.2d 254-255.

14   Therefore, neither the bill of particulars nor the trial court's instructions to

15   the petit jury can be sufficient to charge petitioner with first degree murder or

16   to inform him regarding the essential elements of first degree murder charge. United

17   States v. Camp, 541 F.2d 737, 740 (8th Cir. 1976); U.S. v. Hooker, 841 F.2d 1225,

18   1227, 1232 (4th Cir. 1988).

19   When the essential elements are missing on the information the trial court lacks

20   jurisdiction to tried the defendant on that charge. U.S. v. Hooker, 841 F.2d at 1232.

21   It is well established that a plea of guilty cannot be voluntary in the sense that

22   it constitutes an intelligent admission that the accused committed the offense unless

23   the accused has received "real notice of the true nature of the charge against him,

24   the first and most universally recognized requirement of due process." Smith v.

25   O'Grady, 312 U.S. 329, 334, 61 S. Ct. 572, 574, 85 L.Ed. 859 (1941); Henderson v.

26   Morgan, 426 U.S. 637, 645, 96 S. Ct. 2253, 2257, 49 L.Ed.2d 108, 114 (1976);

27   Marshall v. Lonberger, 459 U.S. 422, 436, 103 S. Ct. 843, 852 (1983).

28

34

1    Because petitioner was not informed about the nature of the charge against him

2    (First Degree Murder) Henderson v. Morgan, supra, 426 U.S. 637, 96 S. Ct. 2253,

3    49 L. Ed.2d 108, 114, fn. 13 the State of California is without jurisdiction to

4    increase his punishment of second degree murder to a punishment of first degree

5    murder.

6    The increase of petitioner's punishment also violates Apprendi v. New Yersey,

7    120 S. Ct. 2348, 2355 (2000); Blakely v. Washington, 124 S. Ct. 2531 (2004) that

8    under the Due Process Clause of the Fifth Amendment and the Notice and jury trial

9    guarantees of the Sixth Amendment any fact that increases the Maximum penalty for

10   a crime must be charged in an indictment, submitted to the jury, and proven beyond

11   a reasonable doubt." "The Fourteenth Amendment commands the same answer in this

12   case involving a State Statute."

13

14   Because petitioner has been punished in excess of the time prescribed by the

15   statutory law in violation of the Due Process Clause to the California and United

16   States Constitutions, he requests his immediate release from custody.

17

18

19

20

21

22

23

24

25

26

27

28

1                          GROUND SIX

2

3    WHEN THE CALIFORNIA SUPREME COURT CONSTRUED PENAL CODE SECTION 3041 IT
4    MISAPPLIED IT'S OWN LAW AND CONSTRUED IT CONTRARY TO THE CLEARLY ESTABLISHED
     LAW BY THE UNITED STATES SUPREME COURT AND IN VIOLATION OF THE  DUE PROCESS
5    CLAUSE TO THE CALIFORNIA AND UNITED STATES CONSTITUTIONS.

6

7    When the California Supreme Court construed Penal Code Section 3041 it misapplied

8    its own law and "when the state misapplied its own law it creates a protected

9    liberty interest reviewable in Habeas Corpus Petition." Hicks v. Oklahoma,

10   447 U.S. 343, 346; Ballard v. Estelle, 937 F.2d 453, 456 (9th Cir. 1991).

11   In re Dannenberg, 34 Cal.4th 1061 the California Supreme Court construed Penal

12   Code Section 3041 in a way to evade consideration of constitutional issues by the

13   federal courts of Parole Suitability Decisions. See Sass v. Cal. Bd. of Prison Terms,

14   376 F. Supp.2d 975 (E.D. Cal. 2005).

15   "Federal courts may not second-guess the State Court's construction of its own
16   state law unless "it appears that its interpretation is an obvious subterfuge to
     evade consideration of federal issue." Mullaney v. Wilbur, 421 U.S. 684, 691,
17   95 S. Ct. 1881, fn. 11, 44 L.Ed.2d 508 (1975); Rogers v. Tennessee, 532 U.S. 451,
18   457, 121 S. Ct. 1693, 149 L.Ed.2d 697 (2001); Hubbard v. Knapp, 379 F.3d 773, 780.
19   (9th Cir. 2004).

20   The United States Supreme Court has held that "When a prison regulation or practi-
21   ce offends a fundamental constitutional guarantee, federal courts will discharge
     their duty to protect constitutional rights." (Johnson v. Avery, 393 U.S. 483, 486,
22   89 S. Ct. 747, 749, 21 L.Ed.2d 718 (1969); Procunier v. Martinez, 416 U.S. 396,
23   405-406, 94 S. Ct. 1800, 1807-1808 (1974).

24   IN Dannenberg the Court stated that in 2001 the Legislature amended Penal Code

25   Section 3041 favorable to the prisoners who are serving life terms. That the 2001

26   amendment to Subsection 3041 (b) appears to assume the Board's present mode of

27   procedure. That the Legislature has not disturbed the Board's interpretation of

28   Section 3041. See In re Dannenberg, supra, 23 Cal. Rptr.2d at 430-438.

                                36

1    Because the California Supreme Court assumed the Legislature wanted the Board's

2    present mode of procedure the Court construed Penal Code Section 3041 contrary to

3    the intent of the Legislature, contrary to the principles of statutory construction

4    and contrary to the clearly established law by the United States Supreme Court.

5        The California Supreme Court held that the BPT can deny to every prisoner who

6    are serving life terms their release on parole for the rest of their natural lives

7    based on the commitment offense factor only if the Board believe the prisoners are

8    risk to the public safety. See In re Dannenberg, supra, 23 Cal. Rptr.3d at 431-432,

9    439-440, 442-443.

10       Previous to the decision in Dannenberg the Board was denying parole release dates

11   to over than 99 percent of the inmates who were eligible for release on parole and

12   to those who the Board found suitable for a parole release date the Governor cance-

13   led their release date. See In re Dannenberg, supra, 23 Cal. Rptr.3d at 448.

14       If previous to the Court's decision in Dannenberg, the Board and the Governor were

15   capriciously and arbitrarily denying almost to every inmate their release on parole

16   now when they don't have to consider the factors and the guidelines, but the commit-

17   ment offense factor only to find the inmates suitable for a parole release date they

18   are going to be denying release on parole in a more capricious and arbitrary manner.

19       This holding of the California Supreme Court is contrary to the clearly establi-

20   shed law by the United States Supreme Court in that it has held:

21   "We have repeatedly hold that the Government's regulatory interest in  community

22   safety can in appropriate circumstances, outweight an individual's liberty inte-

     rest when the indiviual has been arrested for a specific category of extremely

23   serious offenses." That "There is nothing inherently unttainable about a predic-

24   tion of future criminal conduct." U.S. v. Salerno, 481 U.S. 739, 748-751,

25   109 S. Ct. 2095, 2102-2104 (1987) and cases cited therein.

26       It is also contrary to the clearly established law by the United States Supreme

27   Court which has held that the laws shall be enacted in a way to prevent arbitrary

28   application by those who apply them. Grayned v. City of Rockford, 408 U.S. 104,

37

1   108–109; Kolander v. Lawson, 461 U.S. 352, 357–358, 103 S. Ct. 1855, 1858; Smith

2   v. Goguen, 415 U.S. 566, 574, 94 S. Ct. 1242, 1247–1248, 39 L.Ed.2d 605 (1974).

3

4       It is a well established principle of statutory construction that a court in

5   construing a statute it should give significance to every word, phrase, sentence

6   and part of an act to ascertain the intent of the Legislature so as to effectuate

7   the purpose of the law. People v. Black, 32 Cal.3d 1, 5–6, 184 Cal. Rptr. 454,

8   455–456; People v. Craft, supra, 41 Cal.3d 554, 559–560, 224 Cal. Rptr. 626, 629.

9       The California Supreme Court in excess of its jurisdiction failed to give signi-

10  ficance to the words and phrases of Penal Code Subsection 3041 (a) as it is required

11  by the State's Law when a statute is construed.

12      The words and phrases in Penal Code Subsection 3041 (a) cannot be regarded as mere

13  surplusage; They mean something. Carter v. U.S., 530 U.S. 255, 262, 120 S. Ct. 2159,

14  2165 (2000).

15      The federal Constitution protect the prisoner when the State misapplied its own

16  law. The clearly established law by the United States Supreme Court hold:

17  "State statutes or regulations can create a right triggering due process protection

18  to ensure that the state created right is not arbitrarily abrogated." "The touch-

19  stone of the due proces is protection of individuals against arbitrariry action of

20  government." (Dent v. West Virginia, 129 U.S. 114, 132, 9 S. Ct. 231, 233, 32 L. Ed.

21  623, (1889)). 'Wolff v. McDonnell, 418 U.S. 539, 557–558, 94 S. Ct. 2963, 2975–2976

22  (1974); Meachum v. Fano, 427 U.S. 215, 225–226, 96 S. Ct. 2532, 2539 (1976).

23      The California Supreme Court failed to give significance to the command of the

24  Legislature  in Penal Code Subsection 3041 (a) which require that "One year prior

25  to the prisoner's minimum term the Board shall meet with the prisoner and shall

26  normally set a parole release date as provided in Penal Code Section 3041.5. See

27  In re Ramirez, 114 Cal. Rptr.2d 381, 397 (1 Dist. 2001).

28

1    Penal Code Section 3041 (a) also command the Board to establish criteria for the

2    setting of Parole Release Dates and in doing so shall consider the number of

3    victims of the crime for which the prisoner was sentenced and other factors in

4    mitigation and aggravation of the crime. In re Seabock, 140 Cal. App.3d 29, 37-38,

5    189 Cal. Rptr. 310, 315 (1983).

6    The Board established criteria for the setting of parole release dates. See

7    Title 15 of CCR Sections 2400-2411.

8    The Board established matrices to set the base term. Title 15 of CCR Section

9    2403. The Matrices to set the base term are codified guidelines. In re Stanworth,

10   33 Cal.3d 176, 182, 187 Cal. Rptr. 783, 787 (Cal. 1982); In re Seabock, supra,

11   140 Cal.App.3d at 40, 189 Cal. Rptr. at 317, fn. 9.

12   However, the California Supreme Court directed the Board to disregard the Matri-

13   ces to set the base term. In re Dannenberg, 23 Cal.Rtr. 3d at 433 and fn. 15.

14   This holding of the California Supreme Court to eliminate from consideration the

15   matrices to set the base term is contrary to the United States Supreme Court

16   requirement that when the crime is divided into degrees the Courts shall draw

17   lines between the sentences. Solem v. Helm, supra, 77 L.Ed.2d at 652-653.

18   In Penal Code Subsection 3041 (a) the State Legislature commanded the Board to

19   draw the lines between the sentences (the matrices) as it is required by the United

20   States Supreme Court in Solem v. Helm. However, the California Supreme Court in

21   excess of its jurisdiction, contrary to the intention of the Legislature and

22   contrary to the clearly established law by the United States Supreme Court

23   overruled the matrices to set the base term.

24

25

26

27

28

1    Penal Code Section 3041 (a) and CCR 2401 require the Board to set the parole

2    release date in a manner that provides uniform terms for offenses of similar gravi-

3    ty and magnitude with respect to the threat to the public. CCR 2402 and 2403 also

4    require the Board to consider the criteria to find the inmates suitable for a parole

5    release date and to set the base term according to the matrices. The regulations

6    are commanded by Penal Code Subsection 3041 (a).  By directing the Board to deny

7    prisoners their release date based on the commitment offense factor only the court

8    indirectly is directing the Board to disregard the criteria to find the inmates

9    suitable for a parole release date.  This holding of the California Supreme Court

10    is contrary to the command of the Legislature in Penal Code Sebsection 3041 (a) that

11    the Board shall establish criteria to find the inmates suitable for a parole release

12    date and to set the base term.

13    The words and phrases in Penal Code Sub. 3041 (a); and the rules in Title 15 of

14    CCR 2400 to 2411 cannot be regarded as mere surplusage; they mean something. Carter

15    v. U.S., supra, 530 U.S. 255, 262, 120 S. Ct. 2159, 2165.

16    By disregarding the circumstances to find prisoners suitable for a parole release

17    date the Board is disregarding our good conduct in prison, the efforts we have made

18    to obtain our high school diploma and our GED Certificate,, the efforst we have

19    made to complete vocationals and self-help programs and the credits we have earned

20    during two decades of participation in the programs. Everything has been but empty

21    formulas of words.  This holding of the California Supreme Court is contrary to the

22    clearly established law by the United States Supreme Court which has held that

23    "The prvalent modern phylosophy of penology is that the punishment shall fit

24    the offender and not merely the crime." (Williams v. New York, 337 U.S. 241,

25    247-248, 69 S. Ct. 1079, 1083-1084, 93 L. Ed. 1337 (1949)." United States v.

26    Grayson, 438 U.S. 41, 45, 98 S. Ct. 2110, 2113 (1978); and contrary to the precedent

27    of the California Supreme Court. In re Minnis, 7 Cal.3d 639, 644, 102 Cal. Rptr. 749,

28    752, (1972); In re Rodriguez, 14 Cal.3d 639, 650, 122 Cal. Rptr. 252, 560 (Cal. 1975).

1    The holding of the California Supreme Court that the Board can deny the release on

2    parole to inmates on the commitment offense circumstance ony is also contrary to the

3    holding of United States Supreme Court which has held that:

4    "The decision of parole turns on a "discretionary assesment of a mutiplicity

5    of imponderables, entitling primarily what a man is and what he may become

6    rather than simply what he has done." Greenholtz v. Inmates of Nebraska Penal

7    & Corr., 442 U.S. 1, 10, 99 S. Ct. 2100, 2105 (1979); Board of Pardons v. Allen,

8    482 U.S. 369, 107 S. Ct. 2415, fn. 5 (1987).

9

10    The California Supreme Court further contrary to the law of statutory construction

11    and in an unreasonable manner considered the Legislative history of the ISL as well

12    as the circumstances of the enactment of the statute to determine the intent of the

13    Legislature. People v. Craft, supra, 41 Cal. 3d at 560, 224 Cal. Rptr. at 629.

14    From 1975 to 1978 the Legislature made several amendments to the Indeterminate

15    Sentence Law (ISL). See In re Williams, 53 Cal. App. 3d 10, 15, 125 Cal. Rptr. 457,

16    460 (1975); In re Dannenberg, supra, 23 Cal.Rptr.3d at 427, 435-437.

17    The Amendments to the ISL were made because the Board in an arbitrary manner was

18    imposing excessive punishments to the prisoners. See In re Minnis, supra, 7 Cal.3d

19    639, 102 Cal. Rptr. 749; In re Rodriguez, supra, 14 Cal.3d 639, 122 Cal. Rptr. 552;

20    In re Lynch, 8 Cal.3d 410, 105 Cal. Rptr. 217 (1972); In re Sturm, 11 Cal.3d 258,

21    113 Cal. Rptr. 361 (1974); In re Williams, 53 Cal. App. 3d 10, 125 Cal. Rptr. 457,

22    (1976). In In re Dannenberg, supra, 23 Cal. Rptr.3d 435-436, 441-442 the Califor-

23    nia Supreme Court concedes that previous to the amendments to the ISL the Board was

24    arbitrarily and capriciously imposing excessive punishments.

25    In order to prevent the Board from arbitrarily and capriciously denied prisoners

26    their release dates the Legislature commanded the Board to set criteria inorder to

27    find the inmates suitable for a parole relase date and guidelines, the matrices, to

28    set the base term. Penal Code Subsection 3041 (a).

1    Now the California Supreme Court no only failed to consider the history of the

2    ISL in a way to prevent the Board from arbitrarily applied the law (from capri-

3    ciously and arbitrarily denied us (prisoners) our release date  or release on

4    parole) but it construed the ISL in a way that it is encouraging the Board to

5    deny us our release on parole in a more capriciously and arbitrarily manner than

6    previous to the amendments to the ISL.

7    This holding of the California Supreme Court is contrary to the clearly

8    established law by the United States Supreme Court which has held that the laws
     shall be enacted in a way to avoid arbitrary and capricious enforcement. See

9    Grayned v. City of Rockford, 408 U.S. 104, 108-109; Kolander v. Lawson, 461 U.S.

10   352, 357-358, 103 S. Ct. 1855, 1858; Smith v. Goguen, 415 U.S. 566, 574, 94 S. Ct.
     1242, 1247-1248, 39 L. Ed.2d 605 (1974).

11

12

13   For the foregoing reasons the construction of Penal Code Sec. 3041 in In re

14   Dennenberg, 34 Cal. 4th 1061 shall be declared void and unconstitutional because

15   the construction of Penal Code Sec. 3041 is contrary to the law of statutory

16   construction, it is contrary to the Legislature's intent, it violates the Due

17   Process Clause to the California and United States Constitutions and because it is

18   contrary to the clearly established law by the United States Supreme Court.

19

20

21

22

23

24

25

26

27

28

42

1

2

GROUND SEVEN

3  THE CALIFORNIA SUPREME COURT CONSTRUED PENAL CODE SECTION 3041 IN A WAY THAT
4  IT TURNED THE INDETERMINATE SENTENCE LAW INTO A VAGUE AND DISCRIMINATORY LAW
   IN VIOLATION OF THE ADA AND THE DUE PROCESS CLAUSE TO THE CALIFORNIA AND
5  UNITED STATES CONSTITUTIONS.

6  The State's vague law is reviewable by the Federal Courts.

7  "Where the statute or regulation is challenged as vague because individuals
8  to whom it plainly applies simply cannot understand what is required of them
   and do not wish to forswear all activity arguably within the scope of the
9  vague terms abstention is not rquired." Procunier v. Martinez, 416 U.S. 396,
10 94  S. Ct. 1800, fn. 5 (1974).

11 "A"

12  In Dannenberg the Court held that inmates who believe their confinements
13 have become constitutionally excessive to take their claims to court and the court
14 will review them on proportionality grounds. Dennenberg, supra, 23 Cal. Rptr.3d at
15 441-443. However, the Court didn't state how much time is proportionate for
16 second degree murder convictions (15-years to life sentences).

17  In Dannenberg the Court repeatedly states that inmates sentenced for second
18 degree murder convictions are sentenced to serve life maximum terms. See In re
19 Dannenberg, supra, 23 Cal. Rptr. 3d at 420-421, 429-432, 434, 436, 439.

20  Then how the 15-years to life sentences can be disproportionate when on the
21 Court's judgment every second degree murder sentence is a natural life maximum
22  sentence?

23  The principle of gross disproportionality only exist on death penalty sentences.
24 Harmelin v. Michigan, 501 U.S. 957, 995, 111 S. Ct. 2680, 2701-2702 (1991). But
25 if it exist in life sentences it is applied only in the "exceedingly rare" and
26 "extreme" case. Lockyer v. Andrade, 538 U.S. 63, 73, 123 S.Ct. 1166, 1173 (2003);
27 Harmelin v. Michigan, supra, 501 U.S. 957, 963, 111 S. Ct. 2680, 2685.

28

43

1    Therefore, under the principle of disproportionality the sentence of an inmate

2    who was sentenced to 15-years to life for second degree murder conviction will be

3    an exceedingly rare and extremely rare finding of disproportionality.

4    This holding of the California Supreme Court is contrary to the clearly establi-

5    shed law by the United States Supreme Court which has held:

6    "The Government's regulatory interest in community safety can, in appropriate

7    circumstances, outweight an individual's liberty interest when the individual

     has been arrested for a specific category of extremely serious offenses."

8    U.S. v. Salerno, supra, 481 U.S. 738, 748-750, 107 S. Ct. 2095, 2102-2104, and

9    cases cited therein.

10   The United States Supreme Court has held that:  "it would certainly be dangerous

11   if the Legislature could set a net large enough to catch all possible offenders,

     and leave it to the courts to step inside and say who could be rightfully detai-

12   ned and who should be set at large, this would, to some extent, substitute the

13   judicial for the Legislative department of government." Kolander v. Lawson,supra,

14   461 U.S. 352, 103 S. Ct. 1855, fn. 7; Smith v. Goguen, 415 U.S. 566, 94 S. Ct. 1242,

     fn. 9 (1974).

15   The California Supreme Court did exactly that. The Court held that the BPT can

16   denied parole to every inmate on the commitment offense factor only and if the

17   inmate believe he has been retained beyond the constitution allows then to take

18   his claim to court and the court will review it on disproportionality grounds. See

19   In re Dannenberg, supra, 23 Cal. Rptr.3d at 441-443. *

20   "A Statute which either forbids or requires the doing of an act in terms so

21   vague that men of common intelligence must necessarily guess at its meaning and

     differs as to its application, violates the first essential of the Due Process

22   of Law." Smith v. Goguen, supra, 415 U.S. 566, 94 S. Ct. 1242, 39 L. Ed. 2d 605,

23   fn. 8.

24   *  The Court didn't say how those fellow inmates—who have the disability to learn
     high enough to present their claims to court- can take their claims to court.
25   Therefore, Penal Code Section 3041 was also construed in a discriminatory manner
     and in violation of the ADA. Pennsylvania Dept. of Corrections v. Yeskey, 524 U.
26   S. 206, 118 S. Ct. 1952, 141 L. Ed.2d 215 (1998); 42 U.S.C. Sec. 12132. In that
     only the wealthy and the educated can take their parole decision claims to court.

27

28

                                        44

1    The California Supreme Court in In re Dannenberg, supra, 23 Cal. Rptr.3d at 421,

2    443 held that the Board can denied to prisoners our release on parole for the rest

3    of our natural life only by pointing to some evidence that the particular circums-

4    tances of the crime-circumstances beyond the minimum elements of the conviction-

5    indicate exceptional callousness and cruelty with trivial provocation, and that

6    those suggested the inmate remains a danger to public safety.

7    The Court didn't say what are the circumstances beyond the minimum elements of

8    the prisoner's conviction the Board can consider to denied a prisoner his release

9    on parole for the rest of his natural life.

10    The Courts have recognized that all second degree murder by their nature involve

11    a disregard for the life of another. In re Rosenkrantz, 80 Cal. App. 4th 409,

12    95 Cal. Rptr.2d 279, fn. 13 (Cal. App. 2 Dist. 2000); "All second degree murders

13    by definition involve some callousness—i.e., lack of emotion or symphaty, emotio-

14    nal insensitivity, indifference to the feelings and suffering of others." In re

15    Scott, 119 Cal. App. 4th 871, 891, 15 Cal. Rptr.3d 32, 45 (2004); A Florida Court

16    also recognize that all killings are atrocious." Proffitt v. Florida, 428 U.S. 242,

17    255, 96 S. Ct. 2960, 2968 (1976); "An ordinary person could honesly believe that

18    every unjustified, intentional taking of human life is "especially heinously,

19    outrageously or wantonly vile, horrible, inhuman." Godfrey v. Georgia, 442 U.S.

20    420, 428-429, 100 S. Ct. 1759, 1764-1765; Maynard v. Cartwright, 486 U.S. 356,

21    364, 108 S. Ct. 1853, 1859 (1988).

22    For the Members of the Board no matter how or why the murder occurred they always

23    find that the prisoner committed the crime in an especially cruel or callous

24    manner, and that the crime was carried out in a way that "demonstrates an excep-

25    tionally callous disregard for human suffering" and that the motive for the crime

26    "was inexplicable or very trivial in relation to the offense." That the prisoner

27    needs therapy in order to face, discuss, understand and cope with stress in a

28    non-destructive manner. That until progress is made, the prisoner continues to be

1    unpredictable and a threat to others. See In re Dannenberg, supra, 23 Cal. Rptr.3d

2    at 423-424; In re Ramirez, 114 Cal. Rptr.2d 381, 388; In re Rosenkrantz, 80 Cal.

3    App. 4th 409, 418, 95 Cal. Rptr.2d 279, 286, fn. 10, and fn. 14; In re Scott, 119

4    Cal. App. 4th 871, 883, 889, 15 Cal. Rptr.3d at 39, 44.

5    Therefore, no matter what are the circumstances of the crime the evidence shows

6    that the Board always had found and it will find in every murder crime-circumstan-

7    ces beyond the minimum elements of the crime- and that the prisoner committed the

8    crime with exceptionally callousness and cruelty with trivial provocation.

9    Therfore, without guidelines to find the inmate suitable for a parole release

10    date and to set the base term the ISL is vague and the construction of Penal Code

11    Sec. 3041 in In re Dannenberg, 34 Cal. 4th 1061 shall be declared void and uncons-

12    titutional by this Court because it violates petitioner's Due Process Rights to the

13    California and United States Constitutions. 5th, 6th, and 14th Amendments.

14

15    Due to the fact that petitioner was not charged with first degree murder under

16    Penal Code Sec. 189, neither the Court nor anybody within the executive branch of

17    Government have jurisdiction to increase petitioner's conviction of second degree

18    murder to a conviction of first degree murder in that the elements of first degree

19    murder were not on the information. Stirone v. United States, 361 U.S. 212, 217,

20    4 L.Ed.2d 252, 256, fn. 3 (1960); Hendrson v. Morgan, 426 U.S. 637, 645; Almendarz-

21    Torres v. United States, 523 U.S. 224,228, 118 S. CT. 1219, 1223, 140 L. Ed.2d

22    (1998); U.S. v. Hooker, 841 F.2d 1225, 1231-1232 (4th Cir. 1988).

23    Therefore, because petitioner was not charged with first degree murder the elements

24    of a first degree murder cannot be considered to denied his release on parole.

25    The consideration of the elements of first degree murder to denied petitioner his

26    release on parole also violates Apprendi v. New Yersey, 120 S. Ct. 2348, 2355 (2000);

27    and Blakely v. Washington, 124 S.Ct. 2531 (2004) that "Under the due process Clause

28    of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amend-

1    ment, any fact that increases the Maximum penalty for a crime must be charged in an

2    indictment, submitted to the jury, and proven beyond a reasonable doubt."

3       Then, if the elements of a first degree murder charge cannot be considered by

4    the Board to deny petitioner his release on parole, then what are the circumstances

5    to deny his release on parole for the rest of his natural life or to increase his

6    punishment of second degree murder conviction to a punishment of first degree murder

7    conviction?

8    Is not the construction of Penal Code Section 3041 a vague law?

9       The United States Supreme Court requires lines between the sentences when the

10    crimes are divided into degrees. Solem v. Helm, 77 L.Ed.2d at 652-653.

11    The United States Supreme Court further has held:

12    "If arbitrary and discriminatory enforcement is to be prevented laws must provide
     explicit standards for those who apply them." Greyned v. City of Rockford, 408

13    U.S. 104, 108-109; Kolander v. Lawson, supra, 461 U.S. 352, 357-358, 103 S.Ct. 1858.

14    "Although, the doctrine focuses both on actual notice to the citizens and
     arbitrary enforcement, we have recognized recently that the more important

15    aspect of the vagueness doctrine "is not actual notice, but the other principle

16    element of the doctrine—the requirement that a legislature establish minimal

17    guidelines to govern law enforcement." (Smith v. Goguen, 415 U.S. 566, 574,

18    94 S. Ct. 1242, 1247-1248, 39 L.Ed.2d 605 (1974).
     "When the Legislature fails to provide such minimal guidelines, a criminal

19    statute may permit "a standardless sweep that allows policemen, prosecutors,

20    and juries to persue their personal predictions." Id., at 575, 94 S. Ct., at

21    1248.) Kolander v. Lawson, 461 U.S. at 358, 103 S. Ct. at 1858.
     "One of the premises of the void for vagueness doctrine is that an excessively

22    vague statute promotes arbitrary and discriminatory law enforcement by delegating

23    (too much) power to the law-enforcement officers." Grayned v. City of Rockford

24    408 U.S. 104, 108-109; Kolander v. Lawson, supra, 461 U.S. 352, 357, 103 S. Ct.
     1855, 1858; Bear v. City of Wauwatosa, 716 F.2d 1117, 1124 (7th Cir. 1983);

25    United Beverage Co. v. Ind. Alcoholic Beverage, 760 F.2d 155, 158 (7th Cir. 1985).

26

27

28

1    The California Legislature commanded the BPT to establish criteria and guidelines

2    to find the inmates suitable for parole release dates and to set the base ter.

3    See Penal Code Subsection 3041 (a); and Title 15 of CCR Sec. 2401, 2402, and 2403.

4    Therefore, the Legislature established or commanded to be established the guide-

5    lines required by the United States Supreme Court to avoid vagueness and to prevent

6    the government from capriciously and arbitrarily apply the law.

7    However, the California Supreme Court overruled most of Penal Code subsection

8    3041 (a) (It only left intact the requirement that one year previous to the inmate

9    minimum term the Board consider the inmates for a parole release dates) the rest

10    was overruled. The Court overruled the Matrices to set the base term. See In re

11    Dannenberg, supra, 23 Cal. Rptr.3d 417, 433, and fn. 15. And by holding that the

12    Board can denied to every prisoner our release on parole based on the commitment

13    offense factor only the Court impliedly is directing the Board to disregard the

14    criteria to find the prisoners suitable for a parole release date).  The Court

15    further is directing the Board to increase second degree murder crimes to first

16    degree murder crimes. See In re Dannenberg, 23 Cal. Rptr.3d 417, fn. 16.

17    Previous to the decision in Dannenberg the Board was denying parole to over than

18    99 percent of the inmates who were suitable for a parole release date and to those

19    who the Board found suitable for a parole release date the Governor has cancelled

20    their release dates. See In re Dannenberg, 23 Cal. Rptr.3d at 448.

21    Therefore, if previous to the decision on Dannenberg,—when the Board had to

22    consider the guidelines to find the inmate suitable for a parole release date—

23    the Board and the Governor were capriciously and arbitrarily denying prisoners

24    our release on parole now when they don't have to consider the guidelines they are

25    denying  release on parole in a more capricious and arbitrary manner.

26

27

28

1    The law of vagueness require guidelines and standards to prevent the government

2    from arbitrarily applied the law, however, the California Supreme Court not only

3    failed to provide guidelines to avoid arbitrariness on parole decisions, but it

4    eliminated the minimum guidelines that were in effect which guidelines were

5    commanded by the Legislature.

6

7    Therefore, the California Supreme Court turned the ISL into a vague law more

8    vague than it was previous to the construction of Penal Code Section 3041 In re

9    Dannenberg, supra, 34 Cal. 4th 1061 and it construed Penal Code Section 3041 in a

10   discriminatory manner in violation of the ADA and in violation of the Due Process

11   Clause to the California and United States Constitutions. 5th, 6th, and 14th

12   Amendments.

13   For the foregoing reasons this Court shall declares the Decision in In re

14   Dannenberg, supra, 34 Cal. 4th 1061, unconstitutional on vagueness grounds and in

15   violation of the ADA and in violation of the Due Process Clause to the California

16   and United States Constitutions. 5th, 6th, and 14th Amendments.

17

18

19   I, Roberto Urieta,    swear under penalty of perjury that the foregoing is true

20   and correct. Signed at Soledad, California on February 7, 2006.

21

22

23

24                                                   _____

25                                                   Roberto Urieta

26

27

28

                                    49

## PROOF OF SERVICE BY MAIL

(C.C.P. §§1013A, 2015.5)

STATE OF CALIFORNIA )
                     ) SS.
COUNTY OF MONTEREY )

I, Roberto Urieta _____, am a resident of the State of California,

County of Monterey. I am over the age of 18 years and I    am/am not    a party to the within action.

My   business/residence   address is P.O. Box 689, Soledad, California, 93960-0689.

On   February _____, 20 06_____, I served the foregoing:

HABEAS CORPUS PETITION _____

_____

on the parties listed below by placing a true copy thereof enclosed in a sealed envelope with postage

fully prepaid in the United States mail at Soledad, California, addressed as follows:

SUPREME COURT OF CALIFORNIA          DEPARTMENT OF JUSTICE
Ronald Reagan Building               Office of Attorney General
300 S. Spring St., Fl. 2             300 S. Spring St.
Los Angeles, Ca. 90013-1233          Los Angeles, Ca. 90013

There is regular delivery service by the U.S. Postal Service between the place of mailing

and the places so addressed.

I declare under the penalty of perjury under the laws of the State of California that the

foregoing is true and correct.

Executed this _____ day of   February _____, 20 06_____, at

Soledad, California.

/S/ *Roberto Urieta*

Roberto Urieta